In the Matter of NEW YORK TELEPHONE COMPANY, Respondent, against PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Appellant, and CITY OF NEW YORK et al., Intervenors-Appellants.

Argued November 29, 1955; decided February 17, 1956.

*Kent H. Brown, George H. Kenny, Joseph J. Doran, Lawrence M. De Vore, Charles R. Gibson* and *Martin L. Barr* for appellant. I. While the traditional formula — rate base x rate of return = return — still has general acceptance as an approach to the problem of arriving at just and reasonable rates, the so-called "fair value" rate base has been thoroughly discredited and repudiated. (*Smyth* v. *Ames,* 169 U. S. 466; *Consolidated Gas Co. of N. Y.* v. *Newton,* 267 F. 231; *McCardle* v. *Indianapolis Co.,* 272 U. S. 400; *Lindheimer* v. *Illinois Tel. Co.,* 292 U. S. 151; *Dayton P. & L. Co.* v. *Commission,* 292 U. S. 290; *West* v. *Chesapeake & P. Tel. Co.,* 295 U. S. 662; *Southwestern Tel. Co.* v. *Public Service Comm.,* 262 U. S. 276; *Power Comm.* v. *Pipeline Co.,* 315 U. S. 575; *Power Comm.* v. *Hope Gas Co.,* 320 U. S. 591; *Cities Service Gas Co.* v. *Federal Power Comm.,* 155 F. 2d 694.) II. The Public Service Law requires the commission to establish and permit the imposition of "just and reasonable" rates — nothing more, nothing less. It does not prescribe any exclusive method or process by which such rates shall be determined. (*Matter of Village of Saratoga Springs* v. *Saratoga Gas, Elec. Light & Power Co.,* 191 N. Y. 123; *Purcell* v. *New York Central R. R. Co.,* 268 N. Y. 164; *Matter of International Ry. Co.* v. *Public Service Comm.,* 264 App. Div. 506, 289 N. Y. 830; *Power Comm.* v. *Hope Gas Co.,* 320 U. S. 591; *Onondaga Co. Water Auth.* v. *New York Water Service Corp.,* 285 App. Div. 655; *Pittsburgh Glass Co.* v. *Board,* 313 U. S. 146; *Panhandle Co.* v. *Power Comm.,* 143 F. 2d 448, 324 U. S. 635; *Cities Service Gas Co.* v. *Power Comm.,* 155 F. 2d 694, 329 U. S. 773; *Board* v. *Hearst Publications,* 322 U. S. 111; *National Broadcasting Co.* v. *United States,* 319 U. S. 190.) III. Nothing in the legislative, judicial or administrative history of utility regulation and rate making in this State supports the holding below that the commission is required to adopt the formula approach exclusively and in so doing must use a "fair value" rate base. (*Prendergast* v. *New York Tel. Co.,* 262 U. S. 43; *Matter of Bronx Gas & Elec. Co.* v. *Maltbie,* 271 N. Y. 364; *Matter of Consolidated Edison Co.* v. *Maltbie,* 300 N. Y. 196; *Northwestern Co.* v. *Power Comm.,* 321 U. S. 119; *American Tel. & Tel. Co.* v. *United States,* 299 U. S. 232; *United States* v. *New York Tel. Co.,* 326 U. S. 638; *Matter of Rochester Gas*

& Elec. Corp. v. Maltbie, 271 App. Div. 202; Matter of Staten Is. Edison Corp., 60 P. U. R. [N. S.] 385; Matter of New York Tel. Co., 84 P. U. R. [N. S.] 267; Matter of New York Tel. Co., 91 P. U. R. [N. S.] 231.) IV. The commission did not err in excluding the reproduction cost estimates and other evidence solely designed to compute the company's " fair value " rate base. The proffered evidence was of no other import.

Peter Campbell Brown, Corporation Counsel (Morris Handel, Leo A. Larkin and Morris Einhorn of counsel), for City of New York, intervenor-appellant. I. The Public Service Law directive to determine just and reasonable telephone rates, modified by a procedural prescription for due regard to a return upon the " value " of the utility's property, evinces no legislative intent to require rates to be determined, as a matter of substantive law, on the basis of the procedural doctrine of " fair value " or any of its offshoot theories, or on the basis of market or exchange value. (Power Comm. v. Pipeline Co., 315 U. S. 575; Smyth v. Ames, 169 U. S. 466; West v. Chesapeake & P. Tel. Co., 295 U. S. 662; Southwestern Tel. Co. v. Public Service Comm., 262 U. S. 276; Sword Line v. Industrial Comr. of State of N. Y., 212 F. 2d 865; Willcox v. Consolidated Gas Co., 212 U. S. 19; Matter of Bronx Gas & Elec. Co. v. Maltbie, 271 N. Y. 364; People ex rel. Consolidated Water Co. v. Maltbie, 275 N. Y. 357; Railroad Comm. v. Pacific Gas Co., 302 U. S. 388; McCardle v. Indianapolis Co., 272 U. S. 400.) II. The clear purpose and manifest policy of the Public Service Law, as indicated by subsequent legislative enactments, refutes the applicability of market or exchange value to rate making. (Surace v. Danna, 248 N. Y. 18; Group of Investors v. Milwaukee R. R. Co., 318 U. S. 523; Southwestern Tel. Co. v. Public Service Comm., 262 U. S. 276; Matter of International Ry. Co. v. Public Service Comm., 264 App. Div. 506; New England Tel. & Tel. Co. v. State, 95 N. H. 353; Matter of Consolidated Edison Co. v. Maltbie, 300 N. Y. 196; Driscoll v. Edison Co., 307 U. S. 104; St. Joseph Stock Yards Co. v. United States, 298 U. S. 38; Bronx Gas & Elec. Co. v. Maltbie, 268 N. Y. 278; RKO-Keith-Orpheum Theatres v. City of New York, 308 N. Y. 493; Matter of Mounting & Finishing Co. v. McGoldrick, 294 N. Y. 104.)

*Ira M. Millstein, Frank L. Weil* and *Milton Haselkorn* for Abraham & Straus and others, intervenors-appellants. I. The company did not offer any competent proof of facts necessary to be proved in order to authorize a determination as to the reasonableness of (a) the business-residence relationship in charges as contained in its proposed rates, and (b) the charges for its various types of service; and, accordingly, the proposed rates were not justified by the company as required by law. (*City of Rochester* v. *Rochester Gas & Elec. Corp.*, 233 N. Y. 39; *Northern Pac. Ry.* v. *North Dakota,* 236 U. S. 585; *Norfolk & W. Ry.* v. *West Virginia,* 236 U. S. 605; *Banton* v. *Belt Line Ry.,* 268 U. S. 413.) II. Petitioner's contentions are without merit. (*Securities Comm.* v. *Chenery Corp.*, 332 U. S. 194; *Durkin* v. *Wagner Co.,* 115 F. Supp. 118; *Universal Camera Corp.* v. *Labor Bd.,* 340 U. S. 474; *Webb Constr. Co.* v. *National Labor Relations Bd.,* 196 F. 2d 841; *Matter of Village of Tupper Lake* v. *Maltbie,* 257 App. Div. 753.)

*Jacob K. Javits, Attorney-General* (*James O. Moore, Jr., John R. Davison* and *Sidney Kelly, Jr.,* of counsel), *amicus curiæ,* in support of appellant's position. I. The petition is framed under subdivision 6 of section 1296 of the Civil Practice Act which presents for review the question "whether there was any competent proof of all the facts necessary to be proved in order to authorize the determination." Yet, the opinions and briefs below disclose that the sole question there litigated and determined was whether the commission, in excluding evidence of the theoretical cost of reproducing the petitioner's property, violated an alleged rule of law claimed to arise out of subdivision 1 of section 97 of the Public Service Law. It would seem, therefore, that the petition should more properly be cast under subdivision 5 of section 1296 of the Civil Practice Act to present for review the question of "whether, in making the determination, any rule of law affecting the rights of the parties thereto has been violated to the prejudice of the petitioner." II. The majority of the Appellate Division, in construing subdivision 1 of section 97 of the Public Service Law, failed to apply the time-tested rules of construction applicable to such legislation. (*Power Comm.* v. *Hope Gas Co.,* 320 U. S. 591; *Smyth* v. *Ames,* 169 U. S. 466; *United States* v. *Moore,* 95 U. S.

760; *Board* v. *Hearst Publications,* 322 U. S. 111; *Matter of Mounting & Finishing Co.* v. *McGoldrick,* 294 N. Y. 104.) III. The restricted and artificial interpretation adopted by the majority of the Appellate Division raises grave constitutional questions and introduces chaos into the field of public utility regulation. (*Merchants Refrig. Co.* v. *Taylor,* 275 N. Y. 113; *Aerated Products Co.* v. *Godfrey,* 290 N. Y. 92; *Feyler* v. *Mortimer,* 299 N. Y. 309; *Borden's Co.* v. *Baldwin,* 293 U. S. 194; *Hartford Co.* v. *Harrison,* 301 U. S. 459; *United States* v. *Rumely,* 345 U. S. 41.)

*Henry J. Friendly, Ralph W. Brown, Eric B. Nelson, Robert W. Doyle, Edward L. Friedman, Jr.,* and *Jack A. Haner* for respondent. I. The mandate of section 97 that the commission shall give due regard to a reasonable average return upon the value of the telephone company's property actually used in the public service requires the commission to hear and consider evidence showing that the value of the property differs from its depreciated original cost. (*People* v. *Broadway R. R. Co.,* 126 N. Y. 29; *United States* v. *Mine Workers,* 330 U. S. 258; *Fogarty* v. *United States,* 340 U. S. 8; *Cleveland, C., C. & St. Louis Ry. Co.* v. *Backus,* 154 U. S. 439; *Smyth* v. *Ames,* 169 U. S. 466; *San Diego Land & Town Co.* v. *National City,* 74 F. 79, 174 U. S. 739; *Cotting* v. *Kansas City Stock Yards Co.,* 82 F. 850, 183 U. S. 79; *San Diego Land & Town Co.* v. *Jasper,* 189 U. S. 439; *Stanislaus Co.* v. *San Joaquin C. & I. Co.,* 192 U. S. 201; *Willcox* v. *Consolidated Gas Co.,* 212 U. S. 19.) II. The courts of every one of the nine sister States where the problem has arisen have held that, despite the Supreme Court's decision in the *Hope* case, statutes which by their terms or established construction direct a commission to consider the value of a utility's property in fixing rates require the admission of evidence of value such as that offered here. (*Solar Elec. Co.* v. *Public Utility Comm.,* 137 Pa. Super. Ct. 325; *Peoples Natural Gas Co.* v. *Public Utility Comm.,* 153 Pa. Super. Ct. 475; *Philadelphia Transp. Co.* v. *Public Utility Comm.,* 155 Pa. Super. Ct. 9; *City of Pittsburgh* v. *Public Utility Comm.,* 158 Pa. Super. Ct. 229, 171 Pa. Super. Ct. 187, 174 Pa. Super. Ct. 4; *Northern States Power Co.* v. *Board of R. R. Comrs.,* 71 N. D. 1; *Public Service Comm.* v. *Indianapolis Rys.,* 225 Ind.

30; *East Ohio Gas Co.* v. *Public Utilities Comm.*, 133 Ohio St. 212; *City of Marietta* v. *Public Utilities Comm.*, 148 Ohio St. 173.) III. Other New York statutes afford no basis for reading the rate base provisions of section 97 of the Public Service Law in a manner contrary to their natural sense. (*Smith* v. *Western Pacific Ry. Co.*, 203 N. Y. 499; *Hamilton* v. *Rathbone*, 175 U. S. 414; *Helvering* v. *City Bank Co.*, 296 U. S. 85; *People ex rel. Westchester Fire Ins. Co.* v. *Davenport*, 91 N. Y. 574; *People ex rel. Bockes* v. *Wemple*, 115 N. Y. 302; *Brewster* v. *Gage*, 280 U. S. 327; *Matter of Brooklyn, Queens & Suburban R. R. Co.*, 185 N. Y. 171; *Matter of Tiffany*, 179 N. Y. 455; *Naramore* v. *State of New York*, 285 N. Y. 80; *Cimo* v. *State of New York*, 306 N. Y. 143.) IV. The issue sought to be raised by the department store intervenors is not properly before this court. (*Securities Comm.* v. *Chenery Corp.*, 318 U. S. 80, 332 U. S. 194; *Matter of Barry* v. *O'Connell*, 303 N. Y. 46; *Ten Ten Lincoln Place* v. *Consolidated Edison Co.*, 190 Misc. 174, 273 App. Div. 903, 273 App. Div. 973; *People ex rel. Public Service Comm.* v. *New York Tel. Co.*, 262 App. Div. 440, 287 N. Y. 803.)

*Edmund B. Naylon, George Foster, Jr.*, and *Edward F. Huber*, for Long Island Water Corporation, *amicus curiæ*, in support of respondent's position. I. The Public Service Law entitles all public utilities in this State to rates based on the fair value of their property. (*Cummings* v. *Board of Educ. of City of N. Y.*, 275 App. Div. 577, 300 N. Y. 611; *Matter of Village of Saratoga Springs* v. *Saratoga Gas, Elec. Light & Power Co.*, 191 N. Y. 123; *Matter of Rates of Queens Borough & Elec. Co.*, 2 P. S. C. R. [1st Dist., N. Y.] 544; *Matter of Baltz* v. *Brooklyn Borough Gas Co.*, 2 P. S. C. R. [1st Dist., N. Y.] 620; *National Waterworks Co.* v. *Kansas City*, 62 F. 853; *Moritz* v. *Edison Elec. Illuminating Co. of Brooklyn*, 7 P. S. C. R. [1st Dist., N. Y.] 175; *People ex rel. Kings Co. Lighting Co.* v. *Willcox*, 210 N. Y. 479; *Smyth* v. *Ames*, 169 U. S. 466; *San Diego Land Co.* v. *National City*, 174 U. S. 739; *Knoxville* v. *Water Co.*, 212 U. S. 1.) II. The long and consistent administrative, legislative and judicial constructions of the rate-fixing provisions of the Public Service Law, as requiring utility rates to be based on fair value, preclude a contrary construction. (*Matter of New York Tel. Co.*, 91 P. U. R. [N. S.] 231; *Power Comm.* v.

*Hope Gas Co.,* 320 U. S. 591; *Matter of Kolb* v. *Holling,* 285 N. Y. 104; *Grimmer* v. *Tenement House Dept. of City of N. Y.,* 205 N. Y. 549; *Cummings* v. *Board of Educ. of City of N. Y.,* 275 App. Div. 577, 300 N. Y. 611; *People ex rel. Public Service Comm.* v. *New York Tel. Co.,* 262 App. Div. 440, 287 N. Y. 803; *People* v. *Dilliard,* 252 App. Div. 125; *Kings Co. Lighting Co.* v. *City of New York,* 176 App. Div. 175, 221 N. Y. 500; *Matter of Otis* v. *Board of Higher Educ. of City of N. Y.,* 199 Misc. 157; *Matter of Dobess Realty Corp.* v. *Magid,* 186 Misc. 225.) III. The *Hope* case does not support the commission's attempted rejection of the fair value rate base. Other States have struck down similar administrative attempts to use the *Hope* case as an excuse for changing their rate-making standards. (*Power Comm.* v. *Pipeline Co.,* 315 U. S. 575; *Illinois Bell Tel. Co.* v. *Illinois Commerce Comm.,* 414 Ill. 275; *Northern States Power Co.* v. *Public Service Comm.,* 73 N. D. 211; *Equitable Gas Co.* v. *Pennsylvania Public Utility Comm.,* 160 Pa. Super. Ct. 458; *Peoples Natural Gas Co.* v. *Pennsylvania Public Utility Comm.,* 153 Pa. Super. Ct. 475; *Utah Power & Light Co.* v. *Public Service Comm.,* 107 Utah 155; *Matter of Consumers Power Co.,* 82 P. U. R. [N. S.] 97; *Public Utilities Comm.* v. *Michigan State Tel. Co.,* 228 Mich. 658; *Matter of Michigan Bell Tel. Co.,* 85 P. U. R. [N. S.] 327.) IV. As interpreted, the several rate-making sections of our Public Service Law must be construed as prescribing that the same standards be applied for all utility rate making. (*Matter of Doyle,* 257 N. Y. 244; *Techt* v. *Hughes,* 229 N. Y. 222; *People ex rel. Chadbourne* v. *Voorhis,* 236 N. Y. 437; *Smith* v. *People,* 47 N. Y. 330; *Matter of O'Sullivan* v. *Feinberg,* 201 Misc. 658; *Matthews* v. *Matthews,* 240 N. Y. 28; *People ex rel. Standard Oil Co.* v. *Saxe,* 179 App. Div. 721, 222 N. Y. 545; *People ex rel. Doscher* v. *Sisson,* 222 N. Y. 387; *Matter of Chatlos* v. *McGoldrick,* 302 N. Y. 380; *Matter of Meyer,* 209 N. Y. 386.)

FROESSEL, J. The single narrow issue presented on this appeal is whether or not the Public Service Commission, in a telephone rate proceeding under section 97 of the Public Service Law, erred in refusing to receive evidence offered by petitioner of the reproduction cost less depreciation of its physical plant. The weight to be given such evidence, as we shall indicate later, is quite another matter.

Until the 1944 decision of the Supreme Court of the United States in *Federal Power Comm.* v. *Hope Natural Gas Co.* (320 U. S. 591), the resolution of the issue before us would have required consideration of constitutional principles as enunciated in the frequently cited case of *Smyth* v. *Ames* (169 U. S. 466) decided in 1898. There the Supreme Court held that in determining reasonable rates upon the fair value of a utility's property used in the public service, regulatory bodies must take into consideration various factors, including both original costs and reproduction value. However, in 1944, that court determined that the Constitution did not mandate consideration of reproduction cost or any other specific factor in fixing rates, provided the end result — the rate fixed — be just and reasonable (*Federal Power Comm.* v. *Hope Natural Gas Co., supra*).

With the *constitutional* barrier thus removed, public utility rate making in this State remained nonetheless subject to our *statutory* mandate. Section 97 of the Public Service Commission Law, which is the governing statute in telephone rate proceedings, provides: " the commission *shall,* with *due regard, among other things,* to a reasonable average return upon the *value* of the property *actually used* in the public service and to the necessity of making reservation out of income for surplus and contingencies, determine the just and reasonable rates ". (Emphasis supplied.)

The telephone company contends that the above language requires the commission to give due regard to a reasonable return upon a rate base consisting of the present value of its plant, and has offered evidence before the commission as to its current reproduction cost. The commission, however, has refused to receive the " bulk " of such evidence, taking the position that it would use a "so-called investment rate base: one based on original cost less the actual depreciation reserve ", and that the language of the statute is not mandatory, or that, even if it were, it would not require the commission to accept proof of reproduction cost. The majority of the Appellate Division has rejected the position of the commission, and ruled that the proffered evidence of reproduction cost was improperly refused. In our view, this conclusion is inescapable in light of the history and clear language of the Public Service Law.

The legislative history of section 97 and related sections is set forth adequately in the prevailing opinion below, and it will serve no useful purpose to review it here.  In sum, it clearly obviates any mere accident of language in the various statutes whence the commission derives its authority to fix rates for specific utilities.  There can be no doubt that the Legislature, in enacting the Public Service Law, *intended* the difference between those factors which the commission shall consider " among other things " when determining (1) telephone and railroad rates [a just and reasonable return " upon the value of the property actually used in the public service " (telephone corporations: § 97; railroad corporations: § 49, both of which embrace large territories in the State)] and (2) those of other utilities [a just and reasonable return upon " capital actually expended " (omnibus corporations: § 63-b; gas and electric corporations: § 72; steam corporations: § 85; waterworks corporations: § 89-j, utilities more local in scope)].

There is additional evidence that the language of section 97 was deliberately chosen.  By chapter 134 of the Laws of 1921, the Legislature amended sections 49 and 97 of the Public Service Law which then provided that the commission " shall, with due regard, among other things, to a reasonable average return upon the value of the property actually used in the public service  *  *  *  determine the just and reasonable " rates, by causing " shall " to read " may " and by inserting the words " in its discretion " before " determine ".  However, promptly following requests made by Governor Miller (his Papers, 1921, pp. 92–94), the Legislature, among other things, deleted the amendments and restored sections 49 and 97 to their previous mandatory form (L. 1921, ch. 335), which is also their present form.

Indeed, for many years, the commission construed section 97 as requiring a finding of "value ", and recognized that, under the *statute,* aside from constitutional considerations, " value " was something very different from original cost, as, e.g., *Matter of Stone* v. *New York Tel. Co.* (26 N. Y. St. Dept. Rep. 235 [1921]); *Matter of Buck* v. *New York Tel. Co.* (26 N. Y. St. Dept. Rep. 455 [1921]); *Matter of New York Tel. Co.* (29 N. Y. St. Dept. Rep. 1 [1923]); *Matter of New York Tel. Co.* (34 N. Y. St. Dept. Rep. 621 [1926]).

Moreover, in its rule IV governing rate proceedings, after providing that " the utility shall establish by competent evidence the original cost of the property used and useful in the service * * * and the accrued depreciation thereon " (subd. 8), the commission also provided: *" Evidence of reproduction cost* need not be submitted *but if presented* it shall be shown by * * * [a prescribed method] and the corresponding original cost and book cost of the property " is also required to be shown if the book cost differs from the original cost (subd. 10). Subdivision 11 further provides: *" If evidence of reproduction cost is submitted,* the accrued depreciation * * * shall be shown * * *. *Reproduction cost without accrued depreciation is not an element* in determining the *value* of the property *for the purpose of computing a return* and will not be accepted as such " (Rules of Procedure of Public Service Comm., eff. July 1, 1943, as amd., rule IV; 4 N. Y. Official Compilation of Codes, Rules & Regulations, pp. 6–7; all emphasis supplied). Thus, by its own rules, it clearly indicates that such evidence may be submitted.

Despite its interpretation of section 97 over the years, and its own rules which were in effect prior to the *Hope* case (*supra*), and *still are,* the commission now takes the view that the same statute and said rules authorize it to bar proof of reproduction cost less depreciation as some evidence of the value of the company's property actually used in the public service. It took this view, it says, for the first time in 1945, one year after the *Hope* case, in *Matter of Staten Is. Edison Corp.* (60 P. U. R. [N. S.] 385, 421).

But the *Hope* case, of course, could not amend our statute. Only the Legislature may do that. Since it has not chosen to do so, although well over a decade has elapsed since the Supreme Court removed the aforesaid constitutional barrier, section 97 continues to require that the commission *shall* "determine the just and reasonable rates " " with due regard, *among other things* ", to a reasonable average return upon the present value of the company's plant, i.e., " property actually used in the public service " (emphasis supplied).

The concept of value, of course, is quite different from that of cost, and the expression " actually used " connotes a present

use. Thus the commission is required to receive proof of reproduction cost less depreciation as some evidence of present value in the case of utility property which, due to the unique restrictions placed upon it by law, cannot readily be valued by other usual methods, such as so-called " market ", " sales " or " exchange " value.

This is not to say that the rates must be *based* upon reproduction cost less depreciation. As the commission itself states, it is under no statutory or other obligation to confine itself to consideration of any particular one of the various alternative rate bases. All that the statute says is that the commission shall " determine the just and reasonable rates " with " due regard, among other things, to a reasonable average return upon the value of the property actually used in the public service ". " Due regard " to one factor " among other things " requires consideration of that factor. It is by no means controlling. While price indices rise in some periods, in others the general level of prices declines. What consideration is to be given to " value " " among other things " is for the commission to decide, having in mind that the overriding principle governing its primary duty is that it shall determine " just and reasonable rates ".

" Due regard ", as the Supreme Court of the United States has said, " calls for the exercise of discretion " (*Opp Cotton Mills* v. *Administrator,* 312 U. S. 126, 151). " To give due consideration to a particular factor necessarily means to give such weight or significance to it as under the circumstances it seems to merit, and this, of course, involves discretion " (*United States ex rel. Maine Potato Growers & Shippers Assn.* v. *Interstate Commerce Comm.,* 88 F. 2d 780, 783, certiorari denied 300 U. S. 684). In *Railroad Comm.* v. *Pacific Gas Co.* (302 U. S. 388), Chief Justice HUGHES said (p. 398): " While the Court has frequently declared that ' in order to determine present value, the cost of reproducing the property is a relevant fact which should have appropriate consideration,' we have been careful to point out that ' the Court has not decided that the cost of reproduction furnishes an exclusive test ' and in that relation we have ' emphasized the danger in resting conclusions upon estimates of a conjectural character.' " (See, also, *People*

*ex rel. Consolidated Water Co.* v. *Maltbie,* 275 N. Y. 357, appeal dismissed on the ground that " no substantial federal question is presented ", 303 U. S. 158.)

If, then, as we believe, the statute has a clear and definite meaning by its plain language and in the light of its legislative history, neither the commission nor the courts may presume to say that its meaning must now be changed because it reflects an approach to rate making which may currently be unpopular with some experts. Although it is urged that the language of the statute represents the survival of a theory of rate making which is unsound and outmoded, it may here be noted that the element of reproduction cost, which was introduced for the protection of the public as a means of avoiding rates based upon an excessive and unreasonable capital structure, may also serve as a potential safeguard for the public in times of recession. Nor is it without some significance that, after much debate, the 1938 Constitutional Convention recommended, and the People of the State subsequently approved — forty years after *Smyth* v. *Ames* (*supra*) — a provision guaranteeing to municipally owned utilities a fair return on " *the value of the property used and useful in such public utility service* " (N. Y. Const., art. III, § 18; emphasis supplied).

In any event, if indeed the advocates for a prudent investment or any other theory are correct and it is time for a change, that decision is not ours to make. The function of the judiciary is not to choose between different theories of rate making on the sole basis of their alleged merits. All arguments concerning such matters should properly be addressed to the Legislature which, within constitutional limits, may adopt or favor one over the other — as it did in 1934 (L. 1934, ch. 287) in section 114 of the Public Service Law, relating to the fixing of temporary rates — or may rely upon the *expertise* of the commission by empowering them to employ methods and procedures reflecting current trends in economic thought. Neither we, nor any other court, have the power to amend the law as written (*Meltzer* v. *Koenigsberg,* 302 N. Y. 523).

The department stores, intervenors-appellants, urge that we uphold the commission on the basis of the alleged invalidity of rates for business service, as proposed by the telephone com-

pany, in that the company failed to sustain its proposed rates as to business service. Since the question of allocation of rates was never reached below, this is a matter which must be reserved for the commission upon rehearing.

The order below should be affirmed.

DYE, J. (dissenting). I dissent and vote to reverse the order of the court below and to confirm and reinstate the determination of the Public Service Commission, with costs in all courts, on the ground that the cost of reproducing the petitioner's multimillion dollar plant is not material or relevant in the computation of a value rate base. Subdivision 1 of section 97 of the Public Service Law, as I read it, does not mandate the Public Service Commission to employ any exclusive method or process for the determination of a just and reasonable value rate basis, nor does it require such commission to deal differently with separate types of utilities, but rather it requires it to use any fair and reasonable method or process to ascertain a just and reasonable value base, as long as it gives " due regard * * * to a reasonable average return upon the value of the property actually used in the public service " (§ 97, subd. 1). Upon this record, I am satisfied it did so here, particularly as the petitioner does not claim that the rates allowed are either unjust or unreasonable. (See *Federal Power Comm.* v. *Hope Natural Gas Co.*, 320 U. S. 591.)

CONWAY, Ch. J., DESMOND and VAN VOORHIS, JJ., concur with FROESSEL, J.; DYE, J., dissents in a memorandum; FULD and BURKE, JJ., taking no part.

Order affirmed.