Vah Voobhis, J. (dissenting).
By circuitous reasoning, as it seems to me, the court majority is circumventing the Legislature, which has repeatedly declined to pass legislation designed to confer jurisdiction upon the Public Service Commission to determine allowable earnings of affiliated suppliers of public utilities and, in authorizing the regulation of such earnings as affected by sales to affiliates, is overruling Matter of New York Tel. Co. v. Public Serv. Comm. (309 N. Y. 569) by holding that a fair return can be based exclusively on cost less depreciation.
Sections 91, 92 and 97 of the Public Service Law authorize the commission to fix utility rates, and subdivision 3 of section 110 provides that no management, construction, engineering or similar contract made with any affiliated interest shall be effective unless filed with the commission and that “ no charge for any such management, construction, engineering or similar service, whether made pursuant to contract or otherwise, shall exceed the reasonable cost of performing such service.” This provision, added by chapter 279 of the Laws of 1934, was intended to prevent profiteering through excessive payments by utilities of the nature specified in the statute. Attempts to amend this subdivision by adding contracts for the purchase of materials or supplies by a public utility from a manufacturing subsidiary have failed of passage *. Quite evidently the Legis *387 lature has considered that there is a difference between purchase of materials and supplies from affiliates and management, construction, engineering contracts and the like. Materials and supplies ordinarily have market value, by which can be tested whether or not they have been acquired by the utility at inflated prices.
Manifestly it is within the powers of the Public Service Commission, in establishing a rate base, to inquire into whether materials and supplies have been purchased at fair market values, but that is quite a different matter from ruling that however cheaply they may have been procured or efficiently manufactured, no benefit can redound to the parent company through the profits (above a percentage set by the Public Service Commission) of the supplying subsidiary from the sales in question.
In determining whether the prices charged to the operating utility company are fair and reasonable, it is the function of the Public Service Commission to examine into whether there is a market for such products and, if so, whether the prices charged conform thereto. If there be no free market for such goods measured by purchases and sales, then it is necessary to resort to other factors in order to determine the value (Heiman v. Bishop, 272 N. Y. 83). There is a marked distinction, as the court there pointed out, between the method of proving the market value of a commodity dealt in by many persons and in a large number of transactions, so that a definite price or range of prices is established and the commodity may be said to have a market price which is quoted in the market and varies from time to time, depending largely upon supply and demand, and a situation where there are few, if any sales, and then under forced conditions and not in a free market. Under the latter circumstances, other factors need to be resorted to but—certainly in any other than the public utility field—The fair and reasonable prices of such commodities would not be determined exclusively by the operating profit of the producing company, which takes no account of efficiency or the lack of it and good or bad management in production or distribution.
It is said that because appellant’s parent corporation owns its producing affiliates, known as Automatic Electric Sales Corporation (described as AE), Leich Electric Company and Leich *388 Sales Corporation (described as Leich) and General Telephone Directory Company (described as Directory Company), it determines the prices at which their materials and supplies are sold. That may be true, but it does not answer the basic question which is whether they conform to the prices established in a competitive market. Respondents have not inquired into that phase of the subject, being content to point out that AE sells from 50 to 70% of total telephone equipment sales to the “ independent ” utilities (i.e., other than AT&T), and that AE’s sales to its system telephone companies have constituted 38 to 45% of its total sales, and 53% to domestic telephone companies. Ignored is the circumstance that its prices to system telephone companies have increased less than the general price level since it was acquired by appellant’s parent company in 1955, and that it is in a market which actively competes with strong companies such as General Dynamics Corporation, I. T. & T. Company, L. M. Ericsson Telephone Company and Graybar Electric Company. AE sells approximately $150,000,000 of equipment purchases to independent and nonaffiliated telephone companies, in this competitive field.
The majority opinion also overlooks, as it seems to me, that the prices paid by appellant were the same or lower than the prices charged by nonaffiliated competitors of AE in transactions with purchasers dealing at arm’s length.
Leich was merged into AE in 1962, and is not separately considered.
The Directory Company deals at arm’s length with 220 companies having no affiliation with the General System, as well as with 25 General System Companies. In seeking customers it actively competes with strong national and regional companies.
The nonaffiliated customers account for more than half of AE’s equipment sales and a fifth of the Directory Company’s sales.
Respondents appear to take for granted that the Public Service Commission has power to pass upon the earnings of these manufacturing affiliates for the reason that AE, it is said, has not earned less than 19% since 1955 on that portion of its invested capital represented by its common stock and surplus, that Leich earned a substantial return prior to merger with AE, and the Directory Company likewise. The conclusion does not *389 follow that the prices charged to appellant were too high unless, regardless of profit or loss by these producing affiliates in a competitive market, the prices of the goods which were sold were too high. They were not too high simply because these affiliates were making money from which the stockholders of the parent company benefited, unless the Legislature rendered producing affiliates subject to rate regulation which it has not done and has declined to do. Evidently the Legislature has considered that there are advantages to the consuming public in utility companies ’ having manufacturing subsidiaries or affiliates, and without penalizing their operation by placing a premium on inefficiency. This, as it seems to me, is a policy question for the Legislature rather than the courts. Statutes differ from one another in other states; some of them authorize the regulation of profits of producing companies in this situation. We are not bound by those decisions but, on the contrary, are called upon to enforce our own legislative policy rather than to follow the statutes of several other states which are different from our own. This appears to be recognized as a case of first impression in this court, and such decisions as there are in this State point in an opposite direction.
Some stress has been laid upon the case of Smith v. Illinois Bell Tel. Co. (282 U. S. 133, 152-153), involving the Western Electric Company and AT&T. The United States Supreme Court spoke of Western Electric as being virtually the manufacturing department of AT&T. Concerning that the following comment by the California Commission is pertinent, when it was urged that the Western Electric and AE situations were similar, that (25 PUR 3d 129, 134), “As a matter of fact, the two situations are unlike in a number of important respects and there are numerous distinctions between the corporate relationships and the methods of transaction of business of the two. Equipment sold and manufactured by the subsidiaries of Ceneral Telephone Corporation is widely distributed to many independent telephone companies which have no affiliate relationship with it.”
The New York Commission has pointed out that for years approximately 90% of Western Electric’s output has been sold to AT&T companies (Matter of New York Tel. Co., 84 PUR [NS] 267, 284). The Regulatory Commissions of California, *390 Missouri and Washington have ruled that the prices of both AE and the Directory Company are in line with market prices and allowable in full (Matter of General Tel. Co. of California, 25 PUR 3d 129 [Cal. Pub. Util. Comm, 1958]; Matter of General Tel. Co. of Missouri, 43 PUR 3d 366 [Mo. Pub. Serv. Comm., 1962]; Washington Pub. Serv. Comm. v. General Tel. Co. of the Northwest, 30 PUR 3d 145 [1959]).
If the power to regulate, directly or indirectly, profits of manufacturing subsidiaries or affiliates is to be conferred by the court upon the Public Service Commission, and competitive prices of similar materials and equipment in a free market are to be ignored, then the rate base of the producing corporation should be determined in accordance with the principles of valuation previously laid down by the courts (Matter of New York Tel. Co. v. Public Serv. Comm., 309 N. Y. 569, supra). That does not necessarily signify that the parent company’s investment in AE is the yardstick, although it may be a factor to be taken into account, but it is inconsistent with treating cost less depreciation of the physical equipment, and of the physical equipment alone, as the eole standard for measuring value. That was the contention made on behalf of the Public Service Commission and overruled in Matter of New York Tel. Co. v. Public Serv. Comm, (supra).
The order appealed from should be reversed and the determination of the Public Service Commission annulled.
Chief Judge Desmond and Judges Scileppi, Bergan and Keating concur with Judge Fuld; Judge Van Voorhis dissents in an opinion in which Judge Burke concurs.
Order affirmed.

 Assem. Int. No. 597, 1936 Sess.; Sen. Int. No. 10, 1937 Sess.; Assem. Int. No. 16, 1938 Sess.; N. Y. Legis. Doc., 1938, No. 39, p. 20; N. Y. Legis. Doc., 1939, No. 39, pp. 10-17; N. Y. Legis Doc., 1940, No. 39, p. 44.