In the Matter of CHENANGO AND UNADILLA TELEPHONE CORPORATION, Petitioner, *v.* PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent.

Third Department, July 25, 1974.

*Huber, Magill, Lawrence & Farrell (Norman Abell* of counsel), for petitioner.

*Peter Schiff (Charles R. Gibson* and *J. Michael Harrison* of counsel), for respondent.

KANE, J.   Petitioner, the Chenango and Unadilla Telephone Corporation (hereafter C & U), challenges the propriety of

certain actions taken by the respondent Public Service Commission in the course of a proceeding to fix a new rate for its services. Though complicated, the facts are not in serious dispute.

In 1968 petitioner was acquired by the Continental Telephone Company, a holding company, but continued as an active operating concern providing telephone service to some 36,000 customers in central up-State New York. In October of 1972 it filed a revised rate schedule with respondent designed to produce additional annual revenues of some $1,448,000. The commission suspended operation of the new rate schedule pending a hearing and determination concerning the reasonableness of the proposed increase and, thereafter, extended the suspension period to the full 10-month term authorized by law (Public Service Law, § 92, subd. 2). During the suspension period C & U unsuccessfully applied for a temporary rate increase. Although the hearing was completed in March of 1973, the commission did not render its decision on the matter until September 13, 1973, shortly before the September 25, 1973 date upon which C & U's proposed rates would otherwise have gone into effect by operation of law. By that decision respondent permitted C & U to increase its rates so as to generate additional annual revenue of some $798,400 and obtain an allowed 8.7% over-all rate of return. C & U began collecting the new rate on October 25, 1973. By further order dated January 3, 1974, respondent directed cancellation of the increase previously granted and, after February 11, 1974 following interim stays, petitioner reverted to charging its old rates. Respondent has not ordered C & U to make any refunds for the period in which it charged the increased rate.

C & U claims that the permitted increase of $798,400 was erroneously determined and inadequate because it was based, in part, on an arbitrary imputation of additional interest deductions. In excess of the actual amount claimed by petitioner, this sum was derived by allocating to C & U a higher portion of the system-wide debt expense of Continental Telephone Company and its affiliated operating companies. Petitioner maintains that this process has the effect of artificially understating the amount of Federal income taxes it will have to pay and correspondingly underestimates the revenue it will actually need to meet that liability. More importantly, C & U assails the cancellation of its initially permitted rate increase as beyond the power of the commission. Under the particular factual sequence presented, we agree.

During the hearings on petitioner's proposed increase of rates, it became quite evident that other related cases then pending before the commission would likely have an impact on C & U's available sources of revenue. Specifically, two cases were then pending before respondent concerning the amount of intrastate toll charges and the agreements by which those tolls were to be settled among participating telephone companies, including this petitioner. The parties were aware that any determination increasing the amount of such tolls in a manner favorable to C & U would necessarily offset its claimed need for additional revenues to some extent. Accordingly, the September order of the commission, in authorizing a limited increase for C & U, purported to make the rates thereby fixed " subject to redetermination at the conclusion of " those pending cases. When those matters were finally decided in November, the commission calculated that C & U would receive some $972,500 annually in additional intrastate tolls beginning in January of 1974 and initiated proceedings to cancel the increased rates previously fixed. At a hearing in December, petitioner sought, but was denied, an opportunity to present recent operating data in an effort to show how costs had increased since its initial application which would justify retention of this additional revenue without reduction.

The parties go to great lengths to characterize the September order increasing petitioner's rates. Basically, C & U maintains that it was a final determination of its rates which could be reduced thereafter only upon a new and full hearing by the commission. On the other hand, the commission argues that its September order permitted nothing more than a temporary rate increase amenable to later modifications. At best, it would only permit petitioner to present material on the theory or application of the calculated additional intrastate tolls to its originally requested increase. In our opinion, the distinctions urged are more illusory than real. The issue presented actually reduces itself to consideration of whether the commission may grant a partial rate increase upon a condition subsequent and, if so, whether the condition so imposed is unduly restrictive.

Subdivision 1 of section 97 of the Public Service Law clearly permits the commission, after a hearing on its own motion or complaint, to determine and fix reasonable and just maximum charges and rates for telephone service and, " Any such change in [the pre-existing] rate  *  *  *  shall be upon such terms, conditions or safeguards as the commission may prescribe." Therefore, it seems clear that respondent may validly condition

its grant of a rate increase, but petitioner argues that, in effect, this would authorize the respondent to extend the allowable period of suspension beyond the 10-month maximum term allowed by subdivision 2 of section 92 of the Public Service Law. That situation might arise if respondent attempted to indefinitely freeze rates at their old level. Here, however, an increase was granted. It matters little whether such action is classified as a temporary or final determination for, in either event, the regulatory scheme was obeyed and permissibly achieved the intended result. Although it might be desirable for the commission to complete hearings and finally render its determinations within the suspension period, we find nothing in the Public Service Law requiring it to do so. In our opinion the suspension period was designed more as a vehicle to maintain the status quo pending examination of an industry prompted rate increase than as a procedural trap which would hasten the commission to a potentially faulty determination or force it to accept a utility's requested increase *in toto*. Viewed in this light, we need not presently decide how long the commissioner may withhold its determinations or how it might condition what, for want of a better term, may be called its interim result, in order to conclude that the statutory framework admits the possibility of commission action which may, under certain circumstances, be validly conditioned on subsequent events. Any conditions imposed must, of course, be just and reasonable and within the boundaries prescribed for administrative determinations.

We turn then to an examination of the condition imposed in this proceeding. Since the parties expected C & U's revenues to be enhanced by some undeterminable amount at the conclusion of related cases and since determination of those matters was reasonably anticipated within the foreseeable future, we cannot say that the commission acted arbitrarily in conditioning its grant of an increased rate in an amount to be later redetermined. It would have been folly to ignore the impact of those matters in this proceeding. Accordingly, the condition itself was inoffensive.

However, we further conclude that the commission's action in canceling the entire increase by summary procedure was unwarranted. Although it might effect a rate decrease after a hearing (cf. Public Service Law, § 97, subd. 1; § 114), it cannot be ignored that in so doing the commission is bound to consider relevant financial data which is as current as feasible (cf. *New York Tel. Co.* v. *Public Serv. Comm. of State of N. Y.,*

36 A D 2d 261, mod. on other grounds 29 N Y 2d 164 and cases cited therein) to avoid a potentially confiscatory outcome. To sanction the action of the commission in this proceeding, whereby it sought to foreclose evidence of financial information based on actual experience, might allow respondent to impose an insufferable condition subsequent on any rate increase and to endanger any meaningful stabilization of rates. Permitting C & U to file for a new increase is hardly an acceptable substitute; the related pending cases need not have been resolved for a protracted period during which petitioner would presumably have been unable to update its information if the same analogous logic was applied to the commission's present reasoning. In short, petitioner's test period had become stale to the point of requiring a new hearing on its revenue needs before its rate increase could be validly redetermined and canceled. Otherwise, respondent would have the advantage of effecting a rate decrease without conducting a hearing on the reasonableness of C & U's rates as mandated by the afore-mentioned statutes.

Finally, we recognize the authority and responsibility of the commission to consider the tax consequences of an affiliate's interrelated dealings with its parent company (cf. *Matter of General Tel. Co.* v. *Lundy,* 17 N Y 2d 373; *New York Tel. Co.* v. *Public Serv. Comm. of State of N. Y., supra*). Yet in this proceeding we search the record in vain to find any evidence that C & U, in fact, received any benefit from manipulations of its capital structure by the parent concern. The difficulty lies not with the commission's theory of consolidation, but with its absence of proof to demonstrate that C & U was actually and inequitably advantaged by its relation with Continental Telephone Corporation. Accordingly, the determination that petitioner not be allowed its claimed tax deduction is without evidentiary support and cannot be permitted to stand.

The determinations should be annulled, and the matter remitted to the Public Service Commission for further proceedings not inconsistent herewith, without costs.

STALEY, JR., J. P., COOKE, SWEENEY and REYNOLDS, JJ., concur.

Determinations annulled, and matter remitted to the Public Service Commission for further proceedings not inconsistent herewith, without costs.