In the Matter of LONG ISLAND WATER CORPORATION, Petitioner, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent.

Third Department, November 20, 1975

*Huber, Magill, Lawrence & Farrell (Norman Abell* of counsel), for petitioner.

*Peter H. Schiff (Charles R. Gibson* and *Richard C. King* of counsel), for respondent.

MAIN, J. Petitioner, Long Island Water Corporation (herein-

after, LIW), is a New York corporation wholly owned by Continental Water Company (hereinafter, Continental), a Missouri corporate holding company. Continental's assets consist principally of its ownership interest in five operating water utilities, four of which, including LIW, were acquired by an exchange of shares of common stock in Continental for the common shares of the individual utilities. St. Louis Water Company, the remaining subsidiary, was purchased by Continental's using the proceeds of notes upon which the stock of the subsidiaries was pledged as security.

The present controversy arose out of petitioner's filing with the PSC on January 30, 1974 of revised tariff leaves to its rate schedules setting forth new rates for water service. Designed to produce additional annual revenue of $1,745,195, the proposed rates were suspended and hearings were conducted between March 5, 1974 and June 24, 1974. Thereafter, on August 29, 1974, an examiner recommended approval of new rates for LIW that would provide an annual increase in revenue of $648,762 or 37% of the requested amount. The PSC then ruled, on December 27, 1974, that LIW was entitled to additional revenues of $904,707 or 52% of the requested amount. In making this determination, the PSC allocated to LIW a portion of Continental's system-wide debt, and it thereby disallowed $434,585 of the amount claimed by LIW for Federal income tax expense by imputing to LIW additional interest deductions of $905,385.

Challenged in the instant proceeding is the propriety of the PSC's imputation of these additional interest deductions to petitioner in calculating its income tax allowance for rate purposes, but we find that the determination was proper and must be confirmed.

Clearly, the PSC had the authority and the responsibility to examine the tax consequences of LIW's dealings with Continental and its related subsidiaries and to make an adjustment in the proposed rate increase when it determined that LIW would otherwise be "inequitably advantaged" by these dealings (*Matter of Chenango & Unadilla Tel. Corp. v Public Serv. Comm. of State of N. Y.*, 45 AD2d 409, 414). The basic consideration is that charges should be "just and reasonable" (Public Service Law, § 89-b, subd 1; *Matter of New York Tel. Co. v Public Serv. Comm. of State of N. Y.*, 309 NY 569), and, therefore, rates approved by the PSC should consist only of that which is just and reasonable and not an additional

amount representing a savings in taxes (cf. *El Paso Natural Gas Co. v Federal Power Comm.,* 281 F2d 567).

In this instance, LIW joined with the other companies in the Continental system in filing a consolidated Federal income tax return whereby Continental's large debt service on the notes issued for the purchase of St. Louis Water Company was set off as a deduction against the profits of the individual subsidiaries. The net result of these manipulations was that a lesser total tax was paid than would have been due had each company filed its own individual return, and, by the questioned disallowance herein, the PSC was merely recognizing this factor and allocating to LIW its proportionate share of the tax savings. What LIW seeks here is a tax allowance based upon the assumption that it filed an individual return when, in fact, it did not do so. Were this argument adopted and implemented throughout the Continental system, a substantial windfall tax savings would be reaped by Continental and its shareholders and funded by the ratepayers of the individual subsidiaries. Such a result would ignore the balancing of investor and consumer interests inherent in the rate-making process *(Power Comm. v Hope Gas Co.,* 320 US 591. See Comment, Utility Rates, Consumers, and the New York State Public Service Commission, 39 Albany L Rev 707, 722), and it cannot be sustained (cf. *Federal Power Comm. v United Gas Pipe Line Co.,* 386 US 237).

In conclusion, we would further note that our decision here safeguards the interests of LIW's customers without dealing inequitably with the other concerned parties. By the allocation to LIW of only its proportionate share of the system-wide debt, Continental and its shareholders are provided with a just and reasonable return on their investment and no benefits properly belonging to the remaining nonjurisdictional subsidiaries and their customers are appropriated for New York. Additionally, our decision is in accord with *Matter of Chenango & Unadilla Tel. Corp. (supra)* upon which petitioner heavily, but mistakenly, relies because the annulment of the PSC's determination in that case hinged upon an "absence of proof" that the petitioner therein was "actually and inequitably advantaged by its relation" to its parent company, and the court expressly disavowed any difficulty with the PSC's "theory of consolidation" *(Matter of Chenango & Unadilla Tel. Corp. v Public Service Comm. of State of N. Y., supra,* p 414).

The determination should be confirmed, and the petition dismissed, without costs.

SWEENEY, J. P., KANE, KOREMAN and LARKIN, JJ., concur.

Determination confirmed, and petition dismissed, without costs.