■ In the Matter of LEDERLE LABORATORIES DIVISION OF AMERICAN CYANAMID COMPANY et al., Petitioners, v PAUL I. GIOIA et al., Constituting the Public Service Commission of the State of New York, et al., Respondents. — Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the Public Service Commission which authorized the imposition of a surcharge on future bills of petitioner and all other metered customers of Spring Valley Water Company. By decision issued April 24, 1980 in respondent Spring Valley Water Company's (Spring Valley) Rate Case No. 27567, respondent Public Service Commission (the commission) authorized a water rate increase of $2,434,000 for the 12-month period from May 1, 1980 to April 30, 1981, permanently to take effect May 2, 1980. In a second phase of the same rate case, the commission issued a second decision on May 30, 1980, which created a new rate design to implement the foregoing rate increase, based upon Spring Valley's marginal rather than average cost. The new rate structure incorporated a summer rate, for the four-month period beginning May 1, three times higher than the rate for the remainder of the rate year. Since the decision on rate design was made a month after the effective date of

the rate increase and since further delay would be entailed before its actual implementation, during which the former lower rates would remain in effect, it was readily apparent that Spring Valley would be deprived of revenues based upon the higher summer rates for a substantial period after they were to become effective. Consequently, the commission's order of May 30, 1980 acknowledged this problem by specifying that it would subsequently analyze Spring Valley's actual revenues to determine the extent to which the delay caused a loss and whether recoupment measures would be required to make up for that loss. In actual fact, the new higher summer rates were not implemented until June 15, 1980, 44 days after the rate increase should have been effective. In January, 1981, Spring Valley filed an amended tariff proposing an 11% surcharge to be applied to its metered customers to recoup some $1,744,000 in revenues it claimed that it lost as a result of the delay in implementing the new summer rate. In July and August, 1981, after evidentiary hearings and a recommended decision by an administrative law judge, the commission issued orders approving a surcharge of 8.85% until the amount of $1,365,376 was recovered. It is these orders that petitioner, a major customer of Spring Valley, now seeks to review. The first issue to be resolved is whether the commission possessed the legal authority to order a surcharge on water rates to permit Spring Valley to recoup its loss in revenues attributable to the delay in implementing the change in summer rates. Petitioner argues that by imposing the surcharge to recoup Spring Valley's revenue losses, the commission engaged in retroactive ratemaking which, except in instances where a proposed rate change has been suspended and a temporary rate fixed, is prohibited by law. We do not disagree with the general proposition that retroactive ratemaking to compensate a utility for unanticipated prior revenue losses is prohibited (see Public Service Law, §§ 113, 114; *Matter of New Rochelle Water Co. v Public Serv. Comm.*, 31 NY2d 397). However, that principle has no application to the facts of this case. Here, it is indisputable that the commission fixed the rate increase and applicable rate structure in its 1980 Case No. 27567. Petitioner does not now challenge the validity of those determinations, nor can it dispute that through no fault of Spring Valley, the rate increase authorized was not charged to customers until well into the higher summer rate period. When the commission made its initial rate determination, it was aware that its own procedures precluded implementation of the new higher rates until a then unascertainable future date. Unless some remedy could be fashioned, the effect of the delay thus would have been to prevent Spring Valley from having an opportunity to earn its approved annual rate increase. As the commission's decision now under review states: "We recognized at the time of our opinion that though we do not guarantee revenues against bad management, poor market conditions, or Acts of God, we should provide a means for correcting the revenue shortfall that might result from our own action." Under these circumstances, it was rational and was within the commission's authority to remedy the situation by making its rate-fixing decision of May 30, 1980 subject to revision once the extent of the revenue loss attributable to the delay could be ascertained. The commission is statutorily authorized to set rates for water companies subject to its jurisdiction, "upon such terms, conditions or safeguards as the commission may prescribe" (Public Service Law, § 89-j). In *Matter of Chenango & Unadilla Tel. Corp. v Public Serv. Comm.* (45 AD2d 409, 412), we construed a parallel provision containing identical language with respect to telephone service rate-making powers of the commission as authorizing it to determine rates subject to redetermination upon certain future events affecting the utility's sources of revenue. *Chenango & Unadilla Tel. Corp.* is a fortiori applicable here where there has not been

any actual redetermination of rates pursuant to a condition subsequent, but merely the imposition of charges upon Spring Valley's customers that they would have been obliged to pay had the new rate design been implemented on its effective date. Petitioner's alternate contention, that the determination of the amount of the surcharge lacks substantial supportive evidence, is equally without merit. There was substantial evidence in the record, based upon billing comparisons alone for the 44-day delay, that the revenue shortfall attributable *solely* to the rate differential for that period was approximately $1.7 million. After reviewing Spring Valley's revenues for the entire rate year, however, the commission limited the aggregate recoupment to $1,365,000 on the basis of its overall reduced revenues. The commission reasoned that to award Spring Valley the full amount of the revenue loss for the period of the delay would thereby have resulted in an overrecovery of revenues exceeding the total increase authorized in the commission's original decision. In our view, the commission thereby attained a just and reasonable result, compensating Spring Valley for the loss occasioned by the commission's delay in implementing the rate change, but limiting the recovery so as not to burden Spring Valley's customers beyond the amount of the authorized rate increase. Under these circumstances, the commission was not required further to reduce the amount of the surcharge on the basis of the rather inconclusive evidence that a seasonal drought could also have contributed to Spring Valley's revenue losses (*Matter of Tele/Resources v Public Serv. Comm.*, 58 AD2d 406, 409, mot for lv to app den 43 NY2d 647). The commission's determination was therefore founded upon a rational basis and is supported by substantial evidence, and should be confirmed. Determination confirmed, and petition dismissed, with costs. Mahoney, P. J., Sweeney, Kane, Weiss and Levine, JJ., concur.