(Nos. 51455, 51476 cons.—

UNION ELECTRIC COMPANY, Appellant, v. THE ILLI-
NOIS COMMERCE COMMISSION *et al.,* Appellees.—
ILLINOIS BELL TELEPHONE COMPANY, Appel-
lant, v. THE ILLINOIS COMMERCE COMMISSION,
Appellee.

*Opinion filed October 2, 1979.—Rehearing
denied November 30, 1979.*

William E. Jaudes, of St. Louis, Missouri, and Robert Broderick, of Pope and Driemeyer, of Belleville, for appellant.

William J. Scott, Attorney General, of Springfield, and

Bernard Carey, State's Attorney, of Chicago (Richard K. Means and Hercules F. Bolos, Special Assistant Attorneys General, and Thomas J. Swabowski, Assistant Attorney General, all of Chicago, and Michael L. Ginsberg, of Springfield, of counsel), for appellee Illinois Commerce Commission.

Randall Robertson, of Lueders, Robertson & Konzen, of Granite City, and John P. Meyer and Linnea Johnson, of the law offices of John P. Meyer, of Danville, for appellees Cerro Copper Products *et al.*

Justin A. Stanley, Robert A. Helman, Thomas N. Jersild, and Stephen J. Mattson, of Mayer, Brown & Platt, of Chicago, for *amicus curiae* Northern Illinois Gas Company.

Joseph M. Wells, James Hinchliff, and Emmitt C. House, of Chicago, for *amici curiae* Peoples Gas Light & Coke Co. *et al.*

Richard G. Ferguson, David J. Rosso, Boyd J. Springer, William T. Hart, Owen E. MacBride, and Edward J. Griffin (Isham, Lincoln & Beale; Schiff, Hardin & Waite; and Defrees & Fiske, of counsel), for *amici curiae* Central Illinois Light Co. *et al.*

Donald H. Sharp, Thomas P. Hester, John W. McNulty, and Edward Butts, of Chicago (Ensel, Jones, Blanchard & LaBarre, of Springfield, of counsel), for appellant.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (Richard K. Means and Hercules F. Bolos, Special Assistant Attorneys

General, and Thomas J. Swabowski, Assistant Attorney General, all of Chicago, and Michael L. Ginsberg, of Springfield, of counsel), for appellee Illinois Commerce Commission.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale, Edmund Hatfield, and Bernard Rane, Assistant Corporation Counsel, of counsel), for appellee city of Chicago.

MR. JUSTICE RYAN delivered the opinion of the court:

These consolidated cases involve the validity of rates established for two public utilities by the Illinois Commerce Commission. The primary issue concerns the elements used by the Commerce Commission in establishing the rate base of each utility. The order of the Commission in each case rejected the "fair value" concept as the appropriate method of determining the rate base and instead computed the rate base by applying the "original cost" method. The circuit court of Jersey County in cause No. 51455, involving Union Electric Company, and the circuit court of Sangamon County in cause No. 51476, involving Illinois Bell Telephone Company, reversed the Commission's orders and held that the "fair value" method must be followed. The appellate court reversed the circuit courts and upheld the orders of the Commission, with one justice dissenting in each case. (64 Ill. App. 3d 700; 64 Ill. App. 3d 645.) We granted leave to appeal and consolidated the cases in this court. In addition to the rate-base issue, cause No. 51455 (Union Electric) also involves the question of whether the Commerce Commission erred in admitting into evidence a schedule of rates that had been recently established by the Missouri Public Service Commission for the customers of this utility in Missouri, and whether the Illinois Commerce Commission, by establishing the same rates for this utility's

customers in Illinois as the Missouri Commission had established for those customers in Missouri, erred. The circuit court of Jersey County also held the Commerce Commission erred in this respect, and the appellate court, also with one justice dissenting on this issue, reversed the trial court and upheld the Commission's action. 64 Ill. App. 3d 700.

Section 30 of the Public Utilities Act (Ill. Rev. Stat. 1975, ch. 111 2/3, par. 30) grants to the Commission the power "to ascertain the value of the property" of a public utility. Section 32 of the Act requires that all the rates received by the utility "shall be just and reasonable." Section 36 of the Act provides that the utility is entitled to a "reasonable return on the value of the property of said public utility as found by the Commission." This court, in a series of cases beginning almost 60 years ago, has consistently interpreted "value" in the statute to mean "fair value" and not "original cost."

In *State Public Utilities Com. ex rel. City of Springfield v. Springfield Gas & Electric Co.* (1919), 291 Ill. 209, this court, in considering the Commission's power and duty to fix reasonable rates, stated:

> "The basis of all calculations as to the reasonableness of rates to be charged by a corporation maintaining a public utility under legislative sanction must be the fair value of the property being used by it for the convenience of the public, and in order to ascertain that value the original cost of construction, the amount expended in permanent improvements, the present cost of construction, the probable earning capacity of the property under the particular rates prescribed by statute, and the sum required to meet operating expenses, are all matters for consideration and are to be given such weight as may be just and right in each case." (*State Public*

*Utilities Com. ex rel. City of Springfield v. Springfield Gas & Electric Co.* (1919), 291 Ill. 209, 219.)

In *Springfield Gas* the contention was that value for rate-making purposes should be determined by the cost of reproduction new, less depreciation. This court rejected that contention and adopted the fair-value test, stating:

"Therefore it cannot be laid down as a rule without qualifications that cost of reproduction new, less depreciation, is the only basis of valuation for rate-making purposes. It is equally true that the original cost of construction, less depreciation, cannot be held to be the only proper basis for determination of valuation for rate-making purposes. *** [E]very element having any bearing on the situation must be considered in the investigation and then sound business judgment applied to the determination of a valuation that is fair and just to the consumer and the utility." *State Public Utilities Com. ex rel. City of Springfield v. Springfield Gas & Electric Co.* (1919), 291 Ill. 209, 222.

*Smyth v. Ames* (1898), 169 U.S. 466, 42 L. Ed. 819, 18 S. Ct. 418, cited as authority in *Springfield Gas,* appears to have fathered the "fair value" approach to rate-base determination, an approach now apparently abandoned by the Supreme Court. The court in *Smyth v. Ames* was considering a constitutional due process question and was not construing a statute. In *Missouri ex rel. Southwestern Bell Telephone Co. v. Public Service Com.* (1923), 262 U.S. 276, 67 L. Ed. 981, 43 S. Ct. 544, the Supreme Court, in reversing an order of the Missouri Public Service Commission, stated that it is impossible to ascertain what will amount to a fair return upon properties of the utility devoted to public service without taking into consideration current costs. In a concurring opinion, Mr.

Justice Brandeis criticized the fair-value rule of *Smyth v. Ames* and suggested that the rate of return be computed on the amount of capital prudently invested in the utility. It is this prudent-investment theory of Mr. Justice Brandeis which has fathered what is now commonly referred to as the "original cost" method of computing the rate base upon which a reasonable return is to be allowed. In *Federal Power Com. v. Natural Gas Pipeline Co.* (1942), 315 U.S. 575, 86 L. Ed. 1037, 62 S. Ct. 736, the court, in considering a statute, moved away from *Smyth v. Ames* and held that the Federal Power Commission, under the Natural Gas Act, was not bound to use any set formula in determining rates. In that case Mr. Justices Black, Douglas, and Murphy filed a concurring opinion again criticizing the fair-value principle of *Smyth v. Ames,* and voiced concern lest fair value be perpetuated in the judicial review provided in the Act. Finally in *Federal Power Com. v. Hope Natural Gas Co.* (1944), 320 U.S. 591, 88 L. Ed. 333, 64 S. Ct. 281, the court reversed a court of appeals holding which had found that the rate base established by the Federal Power Commission was defective in that it had not reflected the proper elements of present fair value. The Supreme Court held that if the total effect of the rate order cannot be said to be unjust and unreasonable, judicial inquiry under the Act is at an end. The court considered that it is the end result which is to be reviewed and not the method by which that result was obtained. Thus, in construing the Natural Gas Act, the Supreme Court ultimately abandoned its holding in *Smyth v. Ames.*

Though the Illinois court decided *Springfield Gas* well before the onset of the criticism of *Smyth v. Ames* in the cases cited above, and before Mr. Justice Brandeis suggested the prudent-capital-investment concept in his concurrence in *Southwestern Bell Telephone Co.,* this court has adhered to the fair-value approach despite the demise of *Smyth v. Ames* in the Federal courts. In *Peoples Gas*

*Light & Coke Co. v. Slattery* (1939), 373 Ill. 31, decided long after Mr. Justice Brandeis' criticism of *Smyth v. Ames,* this court again approved the fair-value method and stated that the elements considered by the Commission were proper elements to be taken into consideration in the evaluation of the utility's property for "rate-making purposes," and cited *Smyth v. Ames.* See *Peoples Gas Light & Coke Co. v. Slattery* (1939), 373 Ill. 31, 53. Later cases in this court continued to follow *Smyth v. Ames.*

In *Illinois Bell Telephone Co. v. Illinois Commerce Com.* (1953), 414 Ill. 275, the Commission, relying on *Hope Natural Gas Co.,* urged that it should be permitted to use as the basis for the fixing of reasonable rates only the value of the investment, without regard to the present value of the company's property. This court noted that the statutory language that rates and charges made by a public utility shall be "just and reasonable" has remained unchanged in the statute since the enactment of the Public Utilities Act in 1913. The court also noted that, in construing the statute, this court has held that the Commission must use a rate base which represents the fair value of the utility's property. The court further observed that in 1933 the legislature had amended the Act by adding section 36, which specifically referred to a reasonable return upon "the value of said public utility's property used *** in rendering its service to the public." The court noted that thereafter, in *Peoples Gas Light & Coke Co. v. Slattery,* the court had held, as it had previously held, "that the determination of just and reasonable rates under the Illinois statute depends upon the *present fair value* of a utility's property." (Emphasis in original.) (*Illinois Bell Telephone Co. v. Illinois Commerce Com.* (1953), 414 Ill. 275, 289.) Because the Commission had failed to take into account current economic conditions, present price levels, and reproduction costs, and had failed to make specific findings upon which it predicated

its conclusion, the cause was remanded by this court to the Commission.

In *City of Chicago v. Illinois Commerce Com.* (1954), 4 Ill. 2d 554, the same case again came before this court. As stated by the court:

"[T]he city's [city of Chicago] argument consists, for the most part, in an attack upon the portion of our former opinion which adhered to the rule that the rates of this utility must earn a return upon the present value rather than on the original cost of its property." (*City of Chicago v. Illinois Commerce Com.* (1954), 4 Ill. 2d 554, 557-58.)

The city relied upon *Utah Power & Light Co. v. Public Service Com.* (1944), 107 Utah 155, 152 P.2d 542. This court, in answer to the city's argument, stated:

"It will suffice to say that the law of the State of Utah as expounded in that opinion does not comport with the law of the State of Illinois as shown by the opinions of this court. The Supreme Court of Utah held in substance, in that case, that all previous decisions of that court and of the Public Service Commission of Utah applying the present value rule in utility rate cases had been based wholly upon a construction of the due process clause of the Federal constitution, and not in any degree upon an interpretation of the statute of Utah creating the commission. It is not so in Illinois. For many years, this court has ruled that it is the duty of the Illinois Commerce Commission and its predecessor commissions, under the Public Utilities Act of this State, to allow a proper return upon the present fair value of utility property. In the previous opinion in this case [*Illinois Bell Telephone Co. v. Illinois Commerce Com.* (1953), 414 Ill. 275], we referred to

the leading case of *Public Utilities Com. v. Springfield Gas and Electric Co.* 291 Ill. 209, and said (414 Ill. at pp. 288-289): '*In construing the statute* this court held that the Commission must use a rate base which represents the present fair value of the utility property \*\*\*.' " (Emphasis was added in *City of Chicago v. Illinois Commerce Com.*) (*City of Chicago v. Illinois Commerce Com.* (1954), 4 Ill. 2d 554, 558.)

This court continued, stating:

"Though some jurisdictions have tended to vacillate on the question of the meaning of the Federal constitution as applied to public utility rates, a like vacillation on the part of this court is not reflected in its construction of the Public Utilities Act of this State." *City of Chicago v. Illinois Commerce Com.* (1954), 4 Ill. 2d 554, 558-59.

In *City of Alton v. Commerce Com.* (1960), 19 Ill. 2d 76, the Commission established rates which would yield a 5.6% rate of return on a fair-value rate base. The circuit court reversed because this would result in a 17% return on the utility's common stock valued at par. The circuit court assumed that the return on the original common stock investment was the relevant figure in determining the reasonableness of an overall rate of return. This court, however, said:

"It is well established in Illinois that the utility is entitled to a reasonable overall return on the fair value of its property, not the original cost. This provides a flexible rate-making standard which is equally applicable in periods of rising and falling price levels. [Citation.] It would be inconsistent to judge the overall return on the basis of fair value but judge the return accruing to common shareholders on the basis of a par value which is

essentially original cost. The significant figure is the rate of return on common stock valued at fair value." *City of Alton v. Commerce Com.* (1960), 19 Ill. 2d 76, 86-87.

In *Village of Milford v. Illinois Commerce Com.* (1960), 20 Ill. 2d 556, the contention was that in determining fair value the Commission has erroneously computed fair value on original cost. This court said:

"While we do not approve so-called 'original cost' rate base, the commission properly gave it consideration in connection with 'reproduction cost' in determining fair value. There was evidence that the present cost would, for all practical purposes, be substantially the same as original cost because the plant was newly built at current prices and only a small per cent of the original plant, with perhaps a higher reproduction cost, was retained." *Village of Milford v. Illinois Commerce Com.* (1960), 20 Ill. 2d 556, 562.

Finally, in *City of Chicago v. Illinois Commerce Com.* (1966), 34 Ill. 2d 49, 50-51, and in *Du Page Utility Co. v. Illinois Commerce Com.* (1971), 47 Ill. 2d 550, 553, this court adhered to its previous construction of the Act that the utility is entitled to a reasonable return on the basis of the *fair value of the utility property.*

The legislature has not voiced disapproval of this court's interpretation of the Act. In 1921 the Public Utilities Act of 1913 was repealed by the Public Utilities Act of 1921, which reenacted the general regulatory provisions of the former act in substantially the same form. The 1921 act has been amended on numerous occasions. (See J. Mueller, *Origin and Development of Public Utility Regulation in Illinois,* Ill. Ann. Stat., ch. 111 2/3, at xii-xiii & n.25 (principal amendments listed).) As noted by this court in *Illinois Bell Telephone Co. v. Illinois Commerce Com.* (1953), 414 Ill. 275, 289,

following the amendments, this court held, as it had held prior to the amendments, that the determination of just and reasonable rates under the Illinois statute must be based upon the present fair value of a utility's property.

Those who urge the approval of the Commission's orders in these consolidated cases argue that we should not be concerned with the methodology but only with the end result. In other words, they argue that if the method used by the Commission produces the statutory requirement of a reasonable return, the court cannot be concerned with the method adopted by the Commission to achieve that result. They say that whether it followed the fair-value method or the original-cost method of establishing the rate base is a matter of discretion vested in the Commission. The proponents of the Commission orders, in support of this argument, rely upon *Federal Power Com. v. Natural Gas Pipeline Co.* and *Federal Power Com. v. Hope Natural Gas Co.* This court rejected a similar argument in *City of Alton v. Illinois Commerce Com.,* where it stated:

"The Commission objects particularly to setting aside its order because of purported errors in computing reproduction value less depreciation when the final fair value determination is not challenged as unreasonable. It argues that if the final determination is reasonable the courts should not inquire into the separate elements of value which are considered in reaching that finding. This position ignores the right of the parties and the public not just to a reasonable determination but rather to a determination which arises from sound and lawful analysis of the problems presented. Without power to review the intermediate steps in the administrative decision-making process, effective judicial review would be extremely difficult if not impossible. Neither the statute nor this court's decisions in

the rate regulation field indicate that such a result is intended. This court has not confined its review to the Commission's final order but rather, when called upon to do so and with respect for the Commission's expert judgment, it has reviewed the elements of value considered by the Commission in computing present fair value." *City of Alton v. Commerce Com.* (1960), 19 Ill. 2d 76, 80-81.

The proponents of the Commission's orders have presented two totally inconsistent arguments. The first argues that the Commission complied with a fair-value standard. The later argument urges this court to abandon its previous adoption of the fair-value method and to accept the original-cost method of determining rate base.

The first argument contends that in these cases the Commission, in fixing the rate base, complied with the previous holdings of this court which have held that the fair value and not original cost was the proper rate-base method. They argue that the Commission did, in fact, *consider* evidence of reproduction costs as required by our cases and rejected it, finding that the evidence of original cost was more reliable in fixing the fair-value rate base. This argument is not sound. The concept of fair value holds that it is the value of the utility's property devoted to public service upon which the reasonable rate must be returned. It is a *value* concept and not a *cost* concept. Stating it briefly, a cost rate base reflects the amount of invested capital, whereas a value rate basis reflects the value of assets which the utility has devoted to serving the public. (See J. Bonbright, Principles of Public Utility Rates 161, 224 (1961).) One is a property approach; the other is a fund approach. (See Webb, *Utility Rate Base Valuation In An Inflationary Economy,* 28 Baylor L. Rev. 823, 840 (1976).) This is the distinction which Mr. Justice Brandeis made in his concurring opinion in *Southwestern Bell*

*Telephone Co.,* where he stated that it is not specific property that is devoted to public use but capital, that the return should be upon the capital invested and not on the value of the property, and that the return should be computed on the amount of capital prudently invested.

"Fair value" is a highly technical term of art. It is not diametrically opposed to original cost. In determining fair value, original cost and reproduction cost are but two of the several elements that must be considered. Neither alone constitutes the measure of fair value. Just as this court has rejected original cost, less depreciation, as determinative of fair value, it has also rejected as the measure of fair value reproduction cost new, less depreciation. (See the opinions of the court cited above.) Thus, the contention of the Commission and the intervenors that in fixing the rate base the Commission complied with the previous holdings of this court by "considering" the reproduction-cost evidence and rejecting it, and computing the fair-value rate base on original cost is unsound in fact and in theory. It has not set a fair-value rate base. It has instead set an original-cost rate base. It is not the reproduction-cost evidence which the Commission rejected. It is the fair-value method of determining the rate base which was rejected in favor of the original cost.

In 1973 the Illinois Commerce Commission, in a rate case entitled In re Central Illinois Public Service Company, No. 57300 (Illinois Commerce Commission 1973), Util. L. Rep., State (C.C.H.) par. 21900 (1973), acknowledged that Illinois is a State that still uses the "fair value" method of valuing property of utilities in the determinination of the rate base upon which a reasonable return is to be computed. The Commission concluded, however, that in its judgment the "original cost" method best accomplishes the obligations of the Commission. It therefore rejected the "fair value" method and adopted the "original cost" method. In both of the cases now before this court

the Commission, in its orders, referred to its 1973 order in the Central Illinois Public Service Company case and specifically stated that it adheres to its conclusion in that case. The arguments now that the Commission had, in fact, complied with the previous holdings of this court by "considering" and rejecting reproduction cost is contradicted by the very language of these orders.

The second argument advanced by the Commission's proponents urges us to abandon the fair-value rate-base method and to adopt the original-cost rate-base method. The superiority of the latter method has been argued at length. We have also been reminded in the briefs and in oral argument that 38 other jurisdictions now follow the original-cost method.

The dispute concerning the fair-value method as against the original-cost method has been described as the " 'most widely disputed legal issue in the history of American public utility regulation'." (1 A. Priest, Principles of Public Utility Regulation 166 (1969).) Although it is apparent that a majority of the jurisdictions use the original-cost method, Professor Priest has observed that the States still following the fair-value method "are, in the aggregate, probably more significant commercially than their original cost sisters." 1 A. Priest, Principles of Public Utility Regulation 166 (1969).

We need not in this opinion enter into this rate controversy and present the relative merits of the two methods; nor need we speculate which of the two methods we would accept were we writing on a clean slate. The previous decisions of this court, which we have set out at length above, demonstrate that our statute has been consistently construed as requiring that the reasonable return to the utility be based on the fair value of its property. *Springfield Gas* placed this construction on our 1913 act. The act of 1921 repealed the 1913 act but reenacted a substantial portion of its regulatory provisions.

*Peoples Gas Light & Coke Co. v. Slattery* thereafter placed the same construction on the 1921 act. Neither in the reenactment nor in the several amendments to the 1921 act has the legislature suggested any dissatisfaction with this construction.

It is well established that the reenactment of a statute which has been judicially construed is in effect an adoption of that construction by the legislature unless a contrary intent appears. (*Stryker v. State Farm Mutual Automobile Insurance Co.* (1978), 74 Ill. 2d 507; *Hupp v. Gray* (1978), 73 Ill. 2d 78; *Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165.) In view of the history of the Act and the steadfast adherence by this court for almost 60 years to the present-value method, it is appropriate to paraphrase the language of Mr. Justice Blackmun in *Flood v. Kuhn* (1972), 407 U.S. 258, 32 L. Ed. 2d 728, 92 S. Ct. 2099. If there are evils in the present-value method which warrant its abandonment in favor of the original-cost method, the change should be by legislation. (See also *New York Telephone Co. v. Public Service Com.* (1956), 309 N.Y. 569, 132 N.E.2d 847.) We invite the legislature's consideration of these two competing methods of computing rate base.

Although it has been argued that mere inaction by the legislature following a judicial construction does not of itself indicate acquiescence (see R. Dickerson, The Interpretation and Application of Statutes 255 (1975)), the repeated restatement ·by this court of the statutory interpretation over an extended period of time strengthens the presumption of acquiescence in the face of inaction by the legislature. (See, *e.g.,* Schaefer, *Precedent and Policy,* 34 U. Chi. L. Rev. 3, 11 (1966).) When we also consider the reenactment of the Act and the several amendments to it without a suggestion of disagreement with this construction, inaction by the legislature strongly suggests agreement. Under these facts it would appear to be an

usurpation of legislative power for this court now to abandon the fair-value method and apply the original-cost method. The construction this court has placed upon the Act has in effect become a part of the Act, and a change in that construction by this court would amount to amending the statute. The power to accomplish this does not lie in the courts. See generally, R. Dickerson, The Interpretation and Application of Statutes 252-55 (1975); E. Levi, An Introduction to Legal Reasoning 27-57 (1949); 2A Sutherland, Statutes and Statutory Construction sec. 49.05 (4th ed. 1973); Agusti, *The Effect of Prior Judicial and Administrative Constructions on Codification of Pre-Existing Federal Statutes: The Case of the Federal Securities Code,* 15 Harv. J. Legis. 367 (1978); Horack, *Congressional Silence: A Tool of Judicial Supremacy,* 25 Tex. L. Rev. 247 (1947); Rogers, *Judicial Reinterpretation of Statutes: The Example of Baseball and the Antitrust Laws,* 14 Houston L. Rev. 611 (1977).

As conclusive as we feel *stare decisis* is in the determination of this case, we do not view the rule as being absolute and without exception in all cases where statutes have been construed by the courts. The United States Supreme Court has delineated several areas where prior judicial statutory constructions should not be controlling. (See *Monell v. Department of Social Services* (1978), 436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018; *United States v. Reliable Transfer Co.* (1975), 421 U.S. 397, 44 L. Ed. 2d 251, 95 S. Ct. 1708; *Swift & Co. v. Wickham* (1965), 382 U.S. 111, 15 L. Ed. 2d 194, 86 S. Ct. 258; *Smith v. Evening News Association* (1962), 371 U.S. 195, 9 L. Ed. 2d 246, 83 S. Ct. 267; *James v. United States* (1961), 366 U.S. 213, 6 L. Ed. 2d 246, 81 S. Ct. 1052; *Mahnich v. Southern Steamship Co.* (1944), 321 U.S. 96, 88 L. Ed. 561, 64 S. Ct. 455.) Exceptions have also been recognized by this court. (See *Gannon v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.* (1961),

22 Ill. 2d 305; *Nudd v. Matsoukas* (1956), 7 Ill. 2d 608; *Doggett v. North American Life Insurance Co.* (1947), 396 Ill. 354.) Clearly, none of these exceptions are applicable in the cases now before us. We must therefore follow the substantial body of precedent which supports the fair-value method of computing the rate base.

Union Electric Company is a utility engaged in the business of generating and supplying electric energy in Missouri, Illinois and Iowa. Approximately 90% of its customers are in Missouri and approximately 10% in Illinois, with only a small number being in Iowa. In 1975 the utility filed in both Illinois and Missouri proposals for general rate increases. Throughout the year of 1975 hearings were held before the Illinois Commerce Commission. Briefs were filed on behalf of all parties by December 10, 1975, and oral argument was held before the Commission December 16, 1975. The Missouri Commission entered its order on the utility's proposed rate increase in that State on December 22, 1975. The rates filed by Union Electric in compliance with the Missouri order were filed by the Illinois Commerce Commission's engineering staff in this proceeding, and the schedule was admitted into evidence by the Commission as a "late-filed exhibit." The order entered by the Illinois Commerce Commission directed that Union Electric file rate schedules containing the rates set out in an appendix to the order. These rates coincided with those filed pursuant to the Missouri order. In its order the Illinois Commerce Commission stated:

> "Under traditional rate-making procedures, this Commission would approve rates and tariffs which would yield an acceptable rate of return on the value of the utilities property used and useful in serving Illinois rate payers. The peculiar circumstances of this utility's operations in Illinois and Missouri, however, render such consideration impossible in this instance without imposing unjust and unreasonable discriminationatory rates on Illinois rate payers."

It is contended by the proponents of the order that, if the Illinois Commerce Commission were to approve rates higher than those approved by the Missouri Commission, such a schedule would be in violation of section 38 of our Public Utilities Act (Ill. Rev. Stat. 1975, ch. 111 2/3, par. 38), which prohibits a utility from charging rates which discriminate against classes or localities. We do not view section 38 as being applicable in this situation. The Commission properly noted in its order that the difficulty lies in the absence of bi-State or multi-State regulations authorized by law to provide a manner in which discrimination in rates between customers in different States may be prevented. To hold that section 38 of the Act requires the Illinois Commerce Commission to conform the rates that it approves to those approved by the Missouri Commission would, in effect, constitute a violation of the provisions of other sections of the Act.

Section 36 of the Public Utilities Act requires that the rates set or approved by the Commission be such as to provide a reasonable rate of return on the value of the property of the utility as found by the Commission. There is no authority given to the Commission to defer to the judgment of a commission of another State which may have established or approved rates for users of a utility in that State lower than those proposed by the same utility for its service in Illinois. The sole power of the Commission stems from the statute, and it has power and jurisdiction only to determine facts and make orders concerning the matters specified in the statute. (*Lowden v. Illinois Commerce Com.* (1941), 376 Ill. 225, 230.) The statute places the duty upon the Commission to determine the present value of the utility's property used and useful in serving Illinois ratepayers and the statute requires that the rates approved by the Commission provide a reasonable return on the value of that property. That authority cannot be delegated to the Missouri Public Service Com-

mission. This is not to say that after the fair value of the property of the utility devoted to the service of the public in Illinois has been ascertained the Commission, in establishing Union Electric's schedule of charges for Illinois customers, could not consider the rates established by the Missouri Commission, provided those rates produce a reasonable return on the value of the utility's property as ascertained by the Illinois Commission. However, to first accept the Missouri charges or rates would, in effect, be reasoning backwards to the Commission's finding of the proper rate base and then to a fair return. See J. Bonbright, Principles of Public Utility Rates 138 (1961).

For the reasons stated herein, the judgments of the appellate court are reversed, the judgments of the circuit courts are affirmed, and the causes are remanded to the Illinois Commerce Commission for further proceedings in accordance with this opinion.

*Appellate court reversed;*
*circuit courts affirmed;*
*cause remanded,*
*with directions.*