GLADYS MAE DiBELLO, Petitioner, v. ILLINOIS COMMERCE COMMIS-
SION *et al.*, Respondents.

Fourth District No. 4—92—0642

Opinion filed March 18, 1993.

Land of Lincoln Legal Assistance Foundation, Inc., of Springfield (Lauren Pashayan, of counsel), for petitioner.

Cynthia Lynn Bickel, Special Assistant Attorney General, of Chicago, for respondent Illinois Commerce Commission.

Timothy W. Kirk, of Peoria, for respondent Central Illinois Light Company.

JUSTICE KNECHT delivered the opinion of the court:

On February 11, 1991, petitioner Gladys Mae DiBello applied for gas service with respondent Central Illinois Light Company (CILCO). CILCO denied her application because of an outstanding bill in the name of her estranged husband. Petitioner then filed a verified complaint with the Illinois Commerce Commission (ICC) alleging CILCO improperly denied her application for service. The ICC denied her complaint, and she now seeks direct administrative review of the order of the ICC (*DiBello v. Central Illinois Light Co.* (May 28, 1992), Ill. Com. Comm'n No. 91—0183 (Commerce Commission's order) (hereinafter Commerce Commission's order)), denying her request for CILCO to approve her application for utility service without payment of the outstanding utility bill. The crux of the issue surrounds the utility's practice, whereby it employs a legal fiction to find a spouse of the customer of record "liable" for an outstanding bill for the purpose of passing on an application for service. We affirm.

Petitioner and Christopher DiBello were married on August 2, 1985. On October 8, 1986, Christopher DiBello applied for gas service from CILCO for 1612 North 11th Street, Springfield, Illinois. He signed the application and listed petitioner as his spouse. CILCO does not require both spouses to sign the application for service, but nevertheless considered both petitioner and Christopher DiBello to be its customers.

On or about March 2, 1989, petitioner and Christopher DiBello moved to an apartment at 412 West Capitol, Springfield, Illinois, where the past-due bill at issue was incurred. They lived at this address with their four children. Christopher DiBello called CILCO on February 28, 1989, and requested gas service at this property. Neither petitioner nor Christopher DiBello was required to sign a new application for service for 412 West Capitol because a customer is only required to apply for service once. Petitioner acknowledged CILCO provided service to this property and sent bills to the apartment for the

service. The bills were addressed to the spouse that applied for service, which in this instance was Christopher DiBello. The gas service at 412 West Capitol was used for hot water, heating, and cooking.

Petitioner, Christopher DiBello, and their children moved from 412 West Capitol in January 1990 to a property on North Sixth Street, Springfield, Illinois. The final amount owing on the 412 West Capitol property was $509.64 for service incurred between September 29, 1989, and January 22, 1990. The DiBellos were current on their billings for gas service until September 1989. Service to 412 West Capitol was taken out of the DiBellos' name on January 22, 1990, pursuant to a request by the owner of the rental property.

After moving to North Sixth Street, petitioner and Christopher DiBello separated. Shortly thereafter, petitioner and her children moved into an apartment at 812 North Seventh Street, Springfield, Illinois, the property where petitioner resided when she applied for the service which is the subject of this dispute. She moved into this apartment with a friend, Ollie Clark. At no time did Christopher DiBello live at this residence. The gas service to this apartment was in Clark's name, and it commenced on December 9, 1990. The application for gas service listed petitioner as a resident. Gas service at 812 North Seventh Street was used for hot water and heat.

Clark subsequently moved out of the apartment and failed to pay the gas bill. On February 11, 1991, petitioner applied for service in her own name for the 812 North Seventh property. CILCO denied service to petitioner due to the outstanding bill of $509.54 for service provided to the 412 West Capitol property. CILCO advised petitioner she would have to pay the outstanding bill before she could receive service in her own name. Although CILCO denied service to petitioner, she continued to reside in the apartment and use the gas until CILCO terminated the gas service for nonpayment on April 25, 1991. It was unable to terminate gas service prior to this time because of the winter moratorium which precludes utilities from disconnecting services if the temperature will be 32 degrees or below. (See Ill. Rev. Stat. 1991, ch. 111²/₃, par. 8—205.) Petitioner moved out of the apartment after CILCO disconnected service.

Based on these facts, the hearing examiner held *Peoples Gas Light & Coke Co. v. Illinois Commerce Comm'n* (1991), 222 Ill. App. 3d 738, 584 N.E.2d 341, was dispositive of the issue presented, and following this case, found petitioner was responsible for the outstanding bill under section 15(a)(1) of "An Act to revise the law in relation to husband and wife" (commonly referred to as the family expense statute) (Ill. Rev. Stat. 1989, ch. 40, par. 1015(a)(1)). (*DiBello v. Central Illinois Light Co.*

(Mar. 25, 1992), Ill. Com. Comm'n No. 91—0183, at 8 (hearing examiner's proposed order) (hereinafter hearing examiner's proposed order).) CILCO, therefore, properly denied her request for service, and her complaint was denied. Hearing examiner's proposed order, at 8.

Following the filing of a brief on exceptions to the proposed order by petitioner and a responding brief by CILCO, the ICC entered its order. It concluded *Peoples Gas* was dispositive, and petitioner was responsible under the family expense statute for the unpaid utility bill for 412 West Capitol. It therefore denied the complaint. (Commerce Commission's order, at 7, 9.) The ICC thereafter denied petitioner's application for rehearing, and this appeal followed.

■ The family expense statute provides, in relevant part:

"The expenses of the family and of the education of the children shall be chargeable upon the property of both husband and wife, or of either of them, in favor of creditors therefor, and in relation thereto they may be sued jointly or separately." Ill. Rev. Stat. 1989, ch. 40, par. 1015(a)(1).

There apparently is no dispute petitioner would be found liable for the outstanding utility bill under the family expense statute if an appropriate action were brought against her in the circuit court. It is petitioner's argument on appeal, however, that it is beyond the scope of the ICC's authority to determine she is liable for the outstanding utility bill under the family expense statute. She contends in determining her liability the ICC is restricted to considering the express provisions of the Public Utilities Act (Utilities Act) (Ill. Rev. Stat. 1989, ch. 111²/₃, par. 1—101 *et seq.*) and corresponding regulations; she maintains no other law or regulation can be considered. Under the ICC's regulations, she contends only the customer of record can be denied service because of an overdue account. Since she was not the customer of record, she argues she cannot be denied service because of nonpayment of the gas bill in her husband's name. Petitioner, of course, initiated the ICC processes by filing her complaint seeking to use the public agency and its procedures to compel CILCO to grant her service without her paying the past-due bill.

Conversely, CILCO contends it is within the ICC's authority to determine liability under the family expense statute because in all contested cases it must determine all of an individual's legal rights and duties. It must, therefore, look to all law, including the family expense statute, in making its determination. Also, under regulations, a utility may deny service to an applicant who has failed to pay for utility service "furnished" to her; since petitioner was a user of the gas service, CILCO contends it furnished her gas service and could deny

her application based on the past-due bill. See 83 Ill. Adm. Code §280.50 (1985) (procedures rules).

The only case we have found which specifically addresses the ICC's jurisdiction to review a utility's denial of service to an applicant based on apparent liability under the family expense statute is *Peoples Gas*. In that case, the first district held the ICC's statutory duty to enforce statutes affecting public utilities, when enforcement was not specifically vested in some other office or tribunal, gave the ICC jurisdiction to determine a utility's right to "bill" the spouse of the customer of record for an outstanding gas bill based on the family expense statute. (*Peoples Gas*, 222 Ill. App. 3d at .742, 584 N.E.2d at 344.) We agree with the result reached by the first district, and affirm the ICC's decision.

■ In reviewing an ICC decision, this court is limited to determining whether (1) the ICC decision was within the scope of its statutory authority, (2) the ICC made findings adequate to support its decision, and (3) the decision infringed upon constitutional rights. (*United Cities Gas Co. v. Illinois Commerce Comm'n* (1992), 225 Ill. App. 3d 771, 777, 587 N.E.2d 581, 585.) An order of the ICC will not be set aside unless it is against the manifest weight of the evidence. *Rural Electric Convenience Cooperative Co. v. Illinois Commerce Comm'n* (1979), 75 Ill. 2d 142, 148, 387 N.E.2d 670, 673.

■ ■ The issue in this case deals specifically with whether the ICC exceeded its authority by determining CILCO could deny service to petitioner because it had determined she was "liable" for the outstanding utility bill under the family expense statute. The ICC is an administrative agency, the powers of which are derived from the legislature. (*Business & Professional People for the Public Interest v. Illinois Commerce Comm'n* (1991), 146 Ill. 2d 175, 195, 585 N.E.2d 1032, 1039.) Its sole power stems from the Utilities Act, and it has power and jurisdiction only to determine facts and make orders concerning the matters specified in the Act. (*Union Electric Co. v. Illinois Commerce Comm'n* (1979), 77 Ill. 2d 364, 383, 396 N.E.2d 510, 519.) Pursuant to the Utilities Act, the Commission has

> "general supervision of all public utilities, except as otherwise provided in this Act, shall inquire into the management of the business thereof and shall keep itself informed as to the manner and method in which the business is conducted. It shall examine those public utilities and keep informed as to their general condition, their franchises, capitalization, rates and other charges, and the manner in which their plants, equipment and other property owned, leased, controlled or operated are

managed, conducted and operated, not only with respect to the adequacy, security and accommodation afforded by their service but also with respect to their compliance with this Act and any other law, with the orders of the Commission and with the charter and franchise requirements." (Ill. Rev. Stat. 1991, ch. 111²/₃, par. 4—101.)

The Utilities Act also provides a complaint initiated pursuant to any section of the Act shall be considered a "contested case" as defined in section 3.02 of the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1991, ch. 127, par. 1003.02). (Ill. Rev. Stat. 1991, ch. 111²/₃, par. 10—101.) A "contested case" is defined as:

"an adjudicatory proceeding, not including rate making, rule-making, quasi-legislative, informational or similar proceedings, in which the individual legal rights, duties or privileges of a party are required by law to be determined by an agency only after an opportunity for hearing." Ill. Rev. Stat. 1991, ch. 127, par. 1003.02.

■ The ICC also has the authority to adopt "reasonable and proper rules and regulations relative to the exercise of its powers, and proper rules to govern its proceedings, and regulate the mode and manner of all investigations and hearings." (Ill. Rev. Stat. 1991, ch. 111²/₃, par. 10—101.) Given the supervisory nature of the ICC over utilities and its authority to adopt rules relative to the exercise of its powers, we conclude it is within the scope of the ICC's authority, upon a complaint filed such as here, to pass upon a utility's "attribution" of an outstanding gas bill to the spouse of the customer of record—based upon the family expense statute—for the limited purpose of passing on his or her application for service. A utility should not be required to extend service to an applicant who by all appearances is liable for an outstanding gas bill under the family expense statute, even if the service for that time was in the spouse's name. To hold otherwise would affect the ability of the utility to provide "adequate, efficient, reliable, [and] environmentally safe" gas service to Illinois consumers at the lowest possible cost. See Ill. Rev. Stat. 1991, ch. 111²/₃, par. 1—102.

In so ruling we first note the utility would still have to proceed against petitioner in the circuit court and reduce the debt to judgment under the family expense statute in order to use legal process to collect it from her, *i.e.*, the utility's "attribution" of the outstanding bill to her is valid only for its internal purpose of passing on her application for service. And, second, persons in petitioner's position are afforded some protections in the ICC's review of a complaint: petitioner

did not dispute that she and her children resided at the residence and benefitted from the utility service represented by the outstanding bill. Hence, this is not a case where a bill is being "attributed" against the application of a spouse who was not living at the residence during the period the bill was incurred.

For the foregoing reasons, the order of the ICC is affirmed.

Affirmed.

McCULLOUGH and LUND, JJ., concur.