CITIZENS FOR A BETTER ENVIRONMENT, Plaintiff-Appellant, *v.* ILLINOIS COMMERCE COMMISSION, Defendant-Appellee.—ILLINOIS POWER COMPANY, Plaintiff-Cross-Appellant, *v.* ILLINOIS COMMERCE COMMISSION, Defendant-Cross-Appellee.—AMERICAN STEEL FOUNDRIES, DIVISION OF AMSTED INDUSTRIES, INC., *et al.*, Plaintiffs, *v.* ILLINOIS COMMERCE COMMISSION, Defendant-Appellee.—(ILLINOIS POWER COMPANY, Defendant-Appellee and Cross-Appellant.)—GEORGIA HAMPTON *et al.*, Plaintiffs-Appellants, *v.* ILLINOIS COMMERCE COMMISSION *et al.*, Defendants-Appellees.

Fourth District    No. 17086

Opinion filed December 30, 1981.

Robert Goldsmith, of Citizens for a Better Environment, and Debra Senn and William J. Herrmann, both of Governor's Office of Consumer Services, both of Chicago (Barbara J. Revak, of counsel), for appellant Citizens for a Better Environment.

Susan B. Drake, of Land of Lincoln Legal Assistance Foundation, Inc., of Champaign, and Jack Ver Steegh, of Land of Lincoln Legal Assistance Foundation, Inc., of East St. Louis, for appellants Georgia Hampton *et al.*

Schiff, Hardin & Waite, of Chicago, and Hatch, Blockman & McPheters, of Champaign (William T. Hart, Owen E. MacBride, and Lawrence R. Hatch, of counsel), for appellee Illinois Power Company.

Tyrone C. Fahner, Attorney General, of Chicago (Hercules F. Bolos and J. Thomas Russell, Assistant Attorneys General, of counsel), for appellee Illinois Commerce Commission.

JUSTICE WEBBER delivered the opinion of the court:
This appeal lies from an order of the circuit court of Champaign County which affirmed an order of the Illinois Commerce Commission (Commission) granting a general increase in its gas and electric rates to Illinois Power Company (IPC).

Some brief background will be helpful in understanding the issue with which we are concerned. IPC filed a request for rate increases with the Commission on January 9, 1979. Hearings were held by the Commis-

sion, and various parties were permitted to intervene. Among these were the two groups of appellants here: (1) Georgia Hampton and six other low-income, elderly customers of IPC (Hampton), and (2) Citizens for a Better Environment (CBE), a state-wide consumer and environmental group, which has been active in Commission proceedings for a number of years.

The Commission granted the rate increase by an order issued November 28, 1979. Rehearing was denied by the Commission and appeals were taken to the circuit court of Champaign County by Hampton, CBE and certain other intervenors. IPC cross-appealed. On March 2, 1981, the circuit court entered its order affirming the Commission.

Meanwhile, during the pendency of the appeal in the circuit court, on August 8, 1980, IPC filed revised tariff sheets with the Commission. The Commission thereupon suspended the tariffs which are the subject of this appeal and entered into an investigation of the tariffs submitted August 8. About a year later, on July 1, 1981, the Commission issued its order "permanently cancelling and annulling" the tariffs under this appeal and directed IPC to place into effect the tariffs of August 8, 1980, although at a lesser amount than IPC requested in those tariffs. Rehearing was denied by the Commission of its July 1, 1981, order, and no appeal has been taken from that denial.

The order of the circuit court affirming the Commission was appealed to this court by Hampton and CBE; IPC cross-appealed. In October 1981, the Commission filed a motion in this court to dismiss the appeal on the ground of mootness, *viz.*, the tariffs and rate increases granted by the Commission and affirmed by the circuit court had been entirely superseded by the new tariffs of July 1, 1981, which were not appealed, and therefore this court could grant no relief.

■■ Responses were filed to the motion by Hampton and CBE, and we took oral argument on the motion only. We concluded that the appeal had become moot, but notwithstanding, the question of inclusion of construction work in progress (CWIP) in the rate base, as provided in the Commission's order, was one of public importance, required authoritative guidance in the future for public officers, and was likely to recur. Under this exception to the mootness doctrine (*People ex rel. Wallace v. Labrenz* (1952), 411 Ill. 618, 104 N.E.2d 769), we denied the motion to dismiss.

While some peripheral issues have been raised in this appeal, the principal and only significant issue is the inclusion of CWIP in the rate base. IPC cross-appealed in the circuit court and in this court, alleging the failure of the Commission to determine fair value rate bases and using instead original cost. However, counsel for IPC has represented to the

circuit court and to this court that if the order of the Commission is affirmed, IPC would not request reversal on that ground, and in effect would withdraw its cross-appeal. Since we do affirm, we will not concern ourselves with the cross-appeal. The cross-appeal was based on the decision in *Union Electric Co. v. Illinois Commerce Com.* (1979), 77 Ill. 2d 364, 396 N.E.2d 510, which was handed down on October 2, 1979, very near the end of the Commission hearings in the instant case and was still in the process of application for rehearing at the time of the Commission's order.

The CWIP question arises in the instant case by reason of IPC's request to include in its rate base $240,000,000 attributable to an atomic generating station which has been under construction near Clinton, Illinois, since 1975. The record demonstrates that at December 31, 1978, IPC had invested in this plant, known as Clinton Unit No. 1, some $443,000,000 which had been acquired for the most part through the sales of securities. Projections indicated that for construction during the period 1978-1982 over $1,450,000,000 would be required, of which about $1,230,000,000 would be raised through the sale of new securities. No date upon which the Clinton station would become operational was indicated, but it would appear to be several years away. Meanwhile, fresh infusions of cash would be needed. IPC's position was that the servicing of such a large burden of securities which generated no cash earnings was damaging its financial condition and credit-worthiness, so that it would be more difficult to raise additional capital to complete the Clinton station.

IPC therefore requested that the $240 million mentioned above be included in its rate base. The Commission allowed $97 million.

Anterior to any discussion of CWIP as an element in a rate base, we may dispose quickly of a procedural point. The trial court struck from Hampton's and CBE's briefs before it any discussion of CWIP on the basis that the question had not been properly preserved as a matter of law in their petitions for rehearing before the Commission and therefore it could not be appealed under section 67 of the Public Utilities Act (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 71). However, the trial court did discuss the issue in the framework of manifest weight of the evidence. That section provides in part: "* * * No person or corporation in any appeal shall urge or rely upon any grounds not set forth in such application for a rehearing before the Commission." We disagree with the trial court.

■■ The components of a rate base must be determined from statutory and case law. Therefore, it is a legal, not a factual, question. Upon examination of the record, we find that Hampton properly raised the CWIP question as a legal issue. Her petition for rehearing reads in part:

"An allowance for CWIP for the Clinton plant is contrary to the

rate making principle that the rate payer should pay for plant which is 'used or useful' in supplying electricity to the consumer."

The "used or useful" language derives from section 36 of the Public Utilities Act (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 36). While we have some reservations about the application of section 36 to a CWIP question, nevertheless, the question is raised as one of law and all parties to the appeal were therefore on notice of its existence as such. CBE's petition for rehearing raises the question in the posture of manifest weight of the evidence, a mixed question of law and fact. While not so strong as Hampton's position, there is an easily seen parallelism between the two throughout the case, even though there has been no formal adoption of each other's briefs. We therefore are of the opinion that the question has been adequately raised both in the trial court and in this court.

The Commission and IPC argue that if the question has been raised, it has not been passed on by the trial court which struck the matter at that level, and therefore the case must be remanded for findings by that court. We do not agree. The record in this case is almost stupefying in its size; over 8,000 pages of testimony before the Commission covering 56 days of hearings, together with an enormous number of exhibits. To require a trial court to reconsider the record and to make conclusions which would only return to this court which has already spent large amounts of time in digesting that record would be an extremely unwise use of judicial time and effort. The question has been adequately briefed here, and we see nothing to be gained by remandment. Compare *Krasnow v. Bender* (1979), 78 Ill. 2d 42, 47, 397 N.E.2d 1381.

Any discussion of the inclusion of CWIP in a rate base must begin with an examination of the pertinent statutes. Section 36 of the Public Utilities Act (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 36) states in part as follows:

"Whenever there shall be filed with the Commission any schedule stating an individual or joint rate or other charge * * * the Commission shall have power * * * to enter upon a hearing concerning the propriety of such rate or other charge * * *. * * * On such hearing, the Commission shall establish the rates or other charges * * * which it shall find to be *just and reasonable. * * *.

Whenever the Commission is of the opinion and so finds after an examination of any report or reports, annual or otherwise, filed with the Commission by any public utility, together with any other facts or information which the Commission may acquire or receive from an investigation of the books, records or papers or from an inspection of the property of such public utility, that the net income of such public utility after reasonable deductions for depreciation

and other proper and necessary reserves, is in excess of the amount required for a reasonable return upon the value of said public utility's property *used and useful* in rendering its service to the public, and if the Commission is of the opinion and so finds in said cause that a hearing to determine all of the issues involved in a final determination of rates or services will require more than 120 days of elapsed time, the Commission shall have the power in cases of such emergency and it is hereby given authority to at once enter a *temporary* order, after notice to said public utility, fixing a *temporary* schedule of rates, which order shall be forthwith binding upon said public utility; * * *." (Emphasis added.)

Another pertinent statute is section 30 of the Public Utilities Act (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 30) which states:

"The Commission shall have power to ascertain the value of the property of every public utility in this State and every fact which in its judgment may or does have any bearing on such value. In all proceedings before the Commission, initiated by the Commission upon its own motion, or initiated by an application of such public utility, in which the value of the property of any public utility or utilities is an issue, the burden of establishing such value shall be upon such public utility or utilities. In making such valuation the Commission may avail itself of any information, books, documents, or records in the possession of any officer, department or board of the State or any subdivision thereof. The Commission shall have power to make revaluation from time to time and also to ascertain the value of all new construction, extensions, and additions to the property of every public utility."

It is to be noted that the foregoing statutes are neutral on the subject of CWIP. They neither specifically authorize its inclusion in a rate base, nor do they prohibit it. Both Hampton and CBE emphasize the concept of "used and useful," arguing that the Clinton station is not being used nor can it be useful until it becomes operational.

As an aside, we note that the words "used and useful" appear in that portion of section 36 which deals with the imposition of temporary rates. The general legislative mandate to the Commission is contained in the preceding paragraph which directs that rates be "just and reasonable." It therefore follows that the concept of "used and useful," if it is to be applied to just and reasonable rates, can do so only by implication. However, this appears to be the almost universal practice. Nearly every order of the Commission in similar cases employs "used" or "useful" or some similar term. In the instant case a portion of the Commission's order states:

"The Commission has long allowed property held for future use

to be included in the rate base even though it was not expected to be put into use for some years. The Commission has also stated in other rate cases that CWIP may be as used and useful and to the benefit of the customer as property held for future use."

The supreme court has also used language of the same character; for example, "Upon a review of the entire record, it is our conclusion that the rates approved by the commission provided a fair, just and reasonable return on the fair value of the company's property used and useful in the public service." *Villages of Milford v. Illinois Commerce Com.* (1960), 20 Ill. 2d 556, 567, 170 N.E.2d 576, 582.

In its generic sense, the phrase "used and useful" connotes that which is appropriate to the task and is customarily employed therein. In our opinion the general legislative purpose of the Public Utilities Act is to afford the Commission a wide discretion in its determinations. Therefore, the inquiry concerning "used and useful" should center upon *how* the utility will employ the property, not *when*.

Even if we were to adopt Hampton's and CBE's interpretation, we do not believe that a different result should ensue. We find analogy in two decisions by the Supreme Court of Oregon which dealt with the Oregon *ad valorem* taxing statute. In *Willamette University v. State Tax Com.* (1966), 245 Or. 342, 344, 422 P.2d 260, 261, the plaintiff was an exempt institution and the question was whether student housing under construction was entitled to exemption under the Oregon statute which provided exemption for " '(1) * * * only such real or personal property or proportion thereof, as is actually and exclusively occupied or used in the literary, benevolent, charitable or scientific work carried on by such institutions.' "

The Oregon court exhaustively reviewed decisions from other jurisdictions and concluded:

"We are of the opinion that the better rule is found in the opinions of the courts which have carefully considered the issue and reached the conclusion that 'actually occupied and used' pertains to whether or not the premises are then being prepared to carry out purposes of the exempt charity and if they are they fall within the legislative intent." 245 Or. 342, 349, 422 P.2d 260, 263-64.

The *Willamette University* decision was distinguished in *Emanuel Lutheran Charity Board v. Department of Revenue* (1972), 263 Or. 287, 502 P.2d 251. In that case the plaintiff, admittedly exempt under the statute, had purchased some vacant land but was making no immediate use of it. The court held that tax exemption statutes are to be construed strictly, but reasonably, and that something more than mere ownership, or even ownership with an intent to put the property to an exempt use in the future, was necessary to claim the exemption.

In the instant case it is undisputed that the Clinton station is owned by IPC and is being prepared to carry out the purposes of the utility, the generation and distribution of electric current. It is therefore actually being used, and is "used and useful" within the meaning of section 36.

Both IPC and the Commission claim that CWIP has been included in rate bases for more than 50 years, and Hampton and CBE do not seriously dispute this. However, they claim that with the current inflation, high interest rates and high costs of construction, all occurring since 1975, the problem is now much more acute than formerly.

Both sides appear to be factually correct. There is a sprinkling of cases involving CWIP decided by the Commission as long ago as 1920 (*e.g., Re Peoples Power Co.* (1920), P.U.R. 1920E, 710, 717-18; *Re Interstate Water Co.* (1922), P.U.R. 1922E, 246, 261; *Illinois Commerce Com. v. Chicago Telephone Co.* (1923), P.U.R. 1924A, 213, 229-30.) However, more significant amounts in terms of dollars have been appearing since 1975; *e.g., Central Illinois Light Co.* (1975), 8 P.U.R. 4th 617; *Union Electric Co.* (1976, Docket No. 59648); *Illinois Bell Telephone Co.* (1976), 13 P.U.R. 4th 482; *Central Illinois Public Service Co.* (1977), 18 P.U.R. 4th 682.

■■ We do not mention these Commission cases as precedent, because they are not, but they do demonstrate the practices of the Commission itself in CWIP situations. These practices take on significance when they are coupled with legislative inaction. This principle has been enunciated several times by the supreme court in passing upon various provisions of the Public Utilities Act.

In *Illinois Bell Telephone Co. v. Illinois Commerce Com.* (1953), 414 Ill. 275, 111 N.E.2d 329, the court was considering the two-year period of repose provided by section 67 of the Public Utilities Act (Ill. Rev. Stat. 1951, ch. 111 2/3, par. 71). The Commission had made the same interpretation of this provision over a long period of years. The court said:

> "The legislature is well aware of the rulings on this point, has revised the Public Utilities Act once and has amended it numerous times, without changing the language of the quoted sentence. Surely, if it would have intended the sentence to act as a limitation of jurisdiction of the administrative body and found that such limitation was being ignored by the tribunal created by it, the legislature would have amended the act in such a manner that its meaning be made clear." 414 Ill. 275, 279, 111 N.E.2d 329, 332.

In two recent cases the court followed the same policy. In *Radio Relay Corp. v. Illinois Commerce Com.* (1977), 69 Ill. 2d 95, 370 N.E.2d 528, it had occasion to construe section 55 of the Public Utilities Act (Ill. Rev. Stat. 1975, ch. 111 2/3, par. 56) concerning the necessity of a certificate of public convenience and necessity when new equipment and

facilities are extensions of existing ones. The Commission had for a long time interpreted that section to provide for exemption from the certificate requirements. There had been no legislative action during that period. The supreme court held that substantial weight should be accorded such a long-standing interpretation of a statute by the administrative body charged with its application.

Union Electric Co. v. Illinois Commerce Com. (1979), 77 Ill. 2d 364, 396 N.E.2d 510, presents yet another facet of legislative inaction. The Commission in an earlier day had used a fair-value method of valuation. However, it had drifted into an original-cost method. The supreme court had steadfastly held to fair-value. The Public Utilities Act had been amended and reenacted several times during the almost 60 years that conflict had endured. The court held that the construction it had placed on the Act had, in effect, become part of the Act.

Insofar as "used and useful" as discussed above is a predicate for inclusion, these words were first placed in section 36 in 1933; the section was amended in 1955, 1961, 1965, 1976, and 1978; in no instance were the words altered or eliminated. A clearer case of legislative inaction would be difficult to find. In addition, two bills (H.B. 1152 and S.B. 424) were introduced into the 1980 legislative session. These bills would have specifically prohibited the inclusion of CWIP in a rate base. Neither bill was passed. During the 1981 legislative session five bills (H.B. 13, H.B. 1213, S.B. 479, S.B. 509 and S.B. 537) of similar import were introduced, and none was passed.

Furthermore, we know of no supreme court decision outlawing CWIP as an element in a rate base.

We conclude that the legislature has acquiesced in the decisions of the Committee, none of which have been upset by the supreme court on that ground. CWIP is properly included in a rate base.

All parties have cited to us a variety of CWIP cases, or purportedly analogous cases, from other jurisdictions. We do not find these particularly helpful since each State has its own version of a public utility act and with the variations of language, variations in results are inevitable.

One case deserves some comment. In Columbus Gas & Fuel Co. v. Public Utilities Com. (1934), 292 U.S. 398, 78 L. Ed. 1327, 54 S. Ct. 763, the Supreme Court dealt with the inclusion of certain leases of gas fields in a rate base. It held the procedure improper unless the time for using them was so near that they might be said to have the quality of working capital. The court pointed out that leases are often purchased for the purpose of stifling competition and might never be used, so inclusion would penalize ratepayers. Such is not the case here with a nuclear generating plant. It is being built only because it is needed and will be used in the future. Its prognosis is certain. In deciding Columbus Gas the

court stated that working capital is not to be determined upon some rigid formula but must vary with the circumstances. This leaves a broad discretion to the utility commissions of the various States, unless their statutes, unlike Illinois, contain specific directions.

A number of derivative arguments merit short mention. Hampton claims that the CWIP method by which costs of construction are added to the rate base and thus are paid by the ratepayers should yield to the method used known as allowance for funds used during construction (AFUDC). Under the latter system of accounting construction funds are raised by the sale of securities and a portion of them (under a complex formula not pertinent here) are allocated to capital. Upon completion of the project the AFUDC is added to the rate base and recovered through depreciation and a larger base upon which to compute return requirements. The AFUDC method in the short run casts the principal burden of construction on the investors in the company, while the CWIP method places the onus on the ratepayers. Hampton argues that the Commission did not perform a balancing test between rate-payers and investors and by including CWIP in the rate base forced today's ratepayers to finance utility service for those who will obtain it when the Clinton station becomes operational sometime in the future.

■■ The argument has some appeal, but must fail when it is observed that the Commission allowed only $97 million CWIP out of $240 million asked, or about 40%. This, in itself, indicates a balancing of interests. The Commission is charged not only with protecting the interests of the ratepayers, but also with protecting the financial stability of the utility. There was much testimony that investors have become wary of utility securities when the issuer's capital structure is overly heavy with AFUDC, as the testimony further showed to be the case with IPC. Even with the full $240 million in CWIP, if allowed by the Commission, the testimony was that IPC could barely maintain a minimal double A rating on its bonds.

While we feel that the Commission might have been more specific on the point, the totality of the evidence and its order demonstrates that it performed its proper function. We find one portion of the order appropriate:

> "The exclusion of all CWIP from the rate base, from the evidence presented in this proceeding, could place the company in a financial position that could cause a further delay in the completion of Clinton Unit No. 1, and thus magnify extreme financial problems which have a direct adverse effect on ratepayers and investors alike."

It is also argued that the Commission did not make the proper findings, particularly the basis for including $97 million of CWIP in the

rate base. We do not agree. *Camelot Utilities, Inc. v. Illinois Commerce Com.* (1977), 51 Ill. App. 3d 5, 365 N.E.2d 312, sets forth the necessary findings to be made and we find each of them in this record. The Commission also made the ultimate finding, *viz.*, that CWIP may be included in the rate base. We discern no basis for the contention that it must also by specific findings demonstrate its mathematical calculations.

Hampton and CBE also contend that with the changes wrought by economic conditions since 1975, *i.e.*, high costs and long periods needed for construction, the probabilities of mismanagement and cost overruns are magnified; and that the exclusion of CWIP from the rate base would be a disciplinary measure, providing an incentive to the utility to be prudent and to keep costs down. The record contains much evidence of cost overruns amounting to substantial sums of money and of timetables extended often for substantial periods. IPC claims that none of this is its fault.

We are not impressed with IPC's answer, but we do believe that the Commission's action is appropriate. It has made a decision to monitor the Clinton station and the construction work there and will evaluate incentives for cost control.

■■ The Commission is empowered to discipline a utility and it need not do so in a rate proceeding, but may take action independently. Supervision of service and supervision of rates may be separated. *Village of Apple River v. Illinois Commerce Com.* (1960), 18 Ill. 2d 518, 165 N.E.2d 329; *City of Alton v. Illinois Commerce Com.* (1960), 19 Ill. 2d 76, 165 N.E.2d 513.

Hampton and CBE have raised a number of technical objections: matching principle, consumer discount rate, intergenerational equities. In view of the moot nature of this appeal and our decision confirming the inclusion of CWIP in a rate base, we will not lengthen this opinion by extended discussion of these matters. Suffice it to say, they all lay within the expertise of the Commission, and the record shows that they were considered.

For all the foregoing reasons, we find that inclusion of construction work in progress in the rate base of a utility is authorized under the Public Utilities Act, and the order of the circuit court of Champaign County is accordingly affirmed.

Affirmed.

GREEN, P. J., and LONDRIGAN, J., concur.