4-00-0570, 4-00-0596 cons.

NOS. 
4-00-0570, 4-00-0596 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

A. FINKL and SONS COMPANY; ABBOTT

LABORATORIES, INC.; CATERPILLAR, INC.;

DAIMLER CHRYSLER CORPORATION; FORD MOTOR COMPANY; MODERN DROP FORGE COMPANY, INC.; MONSANTO COMPANY; MOTOROLA, INC.; NABISCO BRANDS, INC.; NORTHWESTERN STEEL and WIRE COMPANY; OWENS-ILLINOIS, INC.; R.R. DONNELLEY and SONS; and VISKASE CORPORATION,

Petitioners,

v.     (No. 4-00-0570)

THE ILLINOIS COMMERCE COMMISSION,

ILLINOIS POWER COMPANY, COMMONWEALTH 

EDISON COMPANY, and THE PEOPLE OF THE

STATE OF ILLINOIS EX REL. JAMES E. RYAN, ATTORNEY GENERAL,

Respondents. 

--------------------------------------

THE PEOPLE OF THE STATE OF ILLINOIS ex 

rel. JAMES E. RYAN, ATTORNEY GENERAL,

Petitioner,

v.     (No. 4-00-0596)

COMMONWEALTH EDISON COMPANY; THE

ILLINOIS COMMERCE COMMISSION; ILLINOIS

POWER COMPANY; A. FINKL and SONS 

COMPANY; ABBOTT LABORATORIES, INC.; 

CATERPILLAR, INC.; DAIMLER CHRYSLER 

CORPORATION; FORD MOTOR COMPANY; MODERN DROP FORGE COMPANY, INC.; NABISCO BRANDS, INC.; NORTHWESTERN STEEL and WIRE COMPANY; OWENS-ILLINOIS, INC.; R.R. DONNELLEY and SONS; and VISKASE CORPORATION,
 

Respondents.

)

)

)

)

)

)))))))))))))))))))))))))))))

  Administrative          Review of the

  Illinois Commerce

  Commission

  
No. 00-0259

______________________________________________________________

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

On March 31, 2000, respondent Commonwealth Edison Company (ComEd) filed a petition with respondent Illinois Commerce Commission (ICC) seeking expedited approval of the implementation of a market-based alternative tariff to become effective on or before May 1, 2000.  Several parties filed petitions to intervene, including petitioners, the People of the State of Illinois 
ex
 
rel
. Attorney General James E. Ryan (Attorney General), and A. Finkl 
et
 
al
., collectively known as the Illinois Industrial Energy Consumers (Consumers).  On April 27, 2000, the ICC issued an "interim order," authorizing ComEd to file tariffs that contained the ICC's proposed modification, with such tariffs to become effective May 1, 2000.  In June 2000, the ICC denied the applications for rehearing, which were filed by the Attorney General and Consumers.  Both the Attorney General (No. 4-00-0596) and Consumers (No. 4-00-0570) appealed, and we allowed ComEd's motion to consolidate the two appeals.

On appeal, petitioners argue that (1) the April 2000 order was not a "pass-to-file decision" pursuant to section 9-201 of the Public Utilities Act (Act) (220 ILCS 5/9-201 (West 2000)); (2) the ICC did not properly waive the 45 days' notice requirement; (3) the ICC failed to provide a formal hearing; (4) the ICC failed to comply with its own regulations; (5) the April 2000 order is not supported by substantial evidence and lacks sufficient findings and analysis; (6) the tariffs allowed to go into effect under the April 2000 order do not comply with section 16-112 of the Act (220 ILCS 5/16-112 (West 2000)); (7) the ICC failed to find that ComEd's rate changes were "just and reasonable" pursuant to section 9-201(c) of the Act (220 ILCS 5/9-201(c) (West 2000)); and (8) ComEd failed to meet its burden of proving that the rate changes were "just and reasonable."  We affirm.

. I. BACKGROUND

On March 31, 2000, ComEd filed a "[p]etition for expedited approval of implementation of a market-based alternative tariff, to become effective on or before May 1, 2000, pursuant to [a]rticle IX and [s]ection 16-112 of the [Act (220 ILCS 5/16-112 (West 2000))]."  
ComEd attached to its petition the following: (1) a summary of the market-based proposal, (2) draft tariffs, (3) supporting testimony of three experts, (4) five supporting affidavits from other interested parties, (5) a summary description of the contingent wholesale offer, and (6) a draft order.   

 
To achieve the May 1, 2000, effective date, Com Ed's petition proposed the following schedule: (1) that the ICC issue a notice on or before April 5, 2000, requesting that any petition to intervene or objections to the petition be filed on or before April 10, 2000; (2) any hearing be held on or before April 17, 2000; (3) a hearing examiner's proposed order be issued on or before April 21, 2000, with exceptions due on April 24, 2000; and (4) an be order entered on April 27, 2000. 

The ICC appointed Larry Jones as the hearing examiner for the proceedings.  On April 3, 2000, Jones set a prehearing conference for April 13, 2000.  On April 5, 2000, Jones ruled that April 10, 2000 (this deadline was later extended to April 11) was the due date for responses to Com Ed's proposed procedural schedule.  The Attorney General and Consumers filed petitions to intervene.  Both Consumers and the ICC staff (Staff) objected to ComEd's proposed schedule.  On April 10, 2000, the ICC ruled that the matter should proceed in a manner that would yield an order on or before April 27, 2000.  

On April 13, 2001, Jones held a prehearing conference.  The first question addressed was whether the parties wanted to use verified statements rather than prefiled testimony followed by a cross-examination hearing.  
Consumers objected to the use of verified statements because ComEd had already submitted prefiled testimony.  Several other intervenors raised similar concerns.  
Later during the conference, Consumers questioned under what section of article IX of the Act (220 ILCS 5/9-101 through 9-253 (West 2000)) ComEd was proceeding.  
ComEd never answered Consumers' inquiries.
  Further, ComEd raised the issue of waiving the 
ex
 
parte
 rules for the proceedings. 

The same day as the conference, Jones established the following schedule:  (1) any statements or comments on ComEd's petition would be due April 18, 2000; (2) the hearing examiner's proposed order was to be issued no later than April 24, 2000; (3) exceptions to the proposed order would be due at 3 p.m. on April 25, 2000; and (4) replies to the exceptions would be due at 10 a.m. on April 26, 2000. 

On April 19, 2000, several parties, including ComEd, Consumers, and the Attorney General, filed comments.  
The Staff filed affidavits and prepared testimony of two witnesses.  On April 20, 2000, Jones ordered a revised schedule.  The revised schedule provided that the proposed order would be issued on April 21, 2000, with exceptions due at 4 p.m. on April 24, 2000, and replies to the exceptions due at 12 p.m. on April 25, 2000.

On April 21, 2000, Consumers filed a motion to modify or stay the proceedings, seeking the right to conduct discovery, cross-examination of witnesses, and to reply to the testimony offered by the Staff.  The ICC never ruled on the motion.

That same day, Jones filed his proposed order.  
Petitioners point out that April 21, 2000, was Good Friday and claim that Jones filed the order late in the day.  The copy in the record is not file stamped.  The proposed order approved the tariffs with certain modifications and stated that the order was final.  On April 25, 2000, the Attorney General, ComEd, and Consumers filed briefs on their exceptions to the proposed order.  On April 26, 2000, the Staff filed both a brief on exceptions and a reply brief on exceptions.  The Attorney General, ComEd, and Consumers also filed reply briefs. 
 

On April 27, 2000, the ICC filed an "interim order," approving the tariffs with certain modifications and directing ComEd to file the tariffs reflecting the methodology with the modifications.  ComEd accepted the modifications and filed the tariffs on May 1, 2000.  On May 30, 2000, the Attorney General and Consumers filed applications for rehearing.  On June 7, 2000, the ICC entered an order to dismiss as premature the applications for rehearing.  Both Consumers and the Attorney General appealed.

ComEd filed a motion to dismiss the appeals, arguing that the April 2000 order was not a final order, and Consumers filed a motion to stay the ICC's proceedings.  This court denied both motions.  In its brief, ComEd again objects to this court's jurisdiction, and we again reject ComEd's argument.
   

ComEd also argues that this appeal is moot.  At oral arguments, petitioners conceded that, in light of the ICC's final order, dated April 11, 2001, any order issued by our court would be merely advisory.  However, we choose to address the issues presented under the public interest exception to the mootness doctrine.  See 
Citizens for a Better Environment v. Illinois Commerce Comm'n
, 103 Ill. App. 3d 133, 135, 430 N.E.2d 684, 686 (1981).

II. ANALYSIS

A. Standard of Review

This case involves an order of the ICC, and thus judicial review is limited.  
People ex rel. Hartigan v. Illinois Commerce Comm'n
, 148 Ill. 2d 348, 366, 592 N.E.2d 1066, 1074 (1992).  The ICC's findings of fact are 
prima
 
facie
 correct, and this court will not disturb those findings unless they are (1) against the manifest weight of the evidence, (2) beyond the ICC's statutory authority, or (3) violative of constitutional rights.  
Hartigan
, 148 Ill. 2d at 367, 592 N.E.2d at 1074.  Although the ICC's interpretation of a question of law is not binding on this court (
Hartigan
, 148 Ill. 2d at 367, 592 N.E.2d at 1074), we will accord great deference to the ICC's interpretation of the Act's provisions (
Ameropan Oil Corp. v. Illinois Commerce Comm'n
, 298 Ill. App. 3d 341, 346, 698 N.E.2d 582, 586 (1998)).  Moreover, the party appealing the ICC's decision has the burden of proof.  
This court can, in whole or in part, reverse and set aside the order, affirm the order, or remand the cause to the ICC for further proceedings.  
Hartigan
, 148 Ill. 2d at 367, 592 N.E.2d at 1074.

B.  Section 9-201 of the Act

In a traditional rate case under section 9-201 of the Act (220 ILCS 5/9-201 (West 2000)), the utility asks for a rate change, and the ICC determines whether to suspend the tariff pending a hearing or to let it go into effect.  
Commonwealth Edison Co. v. Illinois Commerce Comm'n
, 180 Ill. App. 3d 899, 904, 536 N.E.2d 724, 728 (1988).  The latter is known as passing a tariff to file, and the rate change goes into effect after 45 days' notice.  The ICC, for good cause shown, may allow rate changes to go into effect without 45 days' notice.  220 ILCS 5/9-201(a) (West 2000).  In this case, the Attorney General argues that the April 2000 order was not a decision to pass the tariff to file, while respondents assert that it was. 

The Attorney General contends that this case cannot be a pass-to-file case because ComEd first sought approval of its market-based methodology by means of a petition.  However, under section 255.30(j) of Title 83 of the Illinois Administrative Code (83 Ill. Adm. Code §255.30(j) (Conway Greene CD-ROM March 2000)), ComEd had to file a petition for the changes to go into effect in less than 45 days' notice.  Moreover, ComEd attached the tariffs with the proposed changes to the petition. 

Petitioners also contend that the modifications made to the tariff render the April 2000 order other than a decision to pass to file under section 9-201(a) of the Act (220 ILCS 5/9-201(a) (West 2000)).  Respondents contend that, even in lieu of the modifications, the April 2000 order was a decision to pass ComEd's tariffs to file.  We agree with respondents.  

Generally, this court will not substitute its judgment for a reasonable interpretation of a statute adopted by an agency charged with its administration.  
Church v. State of Illinois
, 164 Ill. 2d 153, 162, 646 N.E.2d 572, 577 (1995).  Here, ComEd submitted a petition to allow the attached tariffs to pass to file on less than 45 days' notice.  The ICC allowed the tariffs to pass to file on less that 45 days' notice but made some modifications to the tariffs.  The manner in which the ICC decides whether to pass a tariff to file is within its discretion.  
Antioch Milling Co. v. Public Service Co. of Northern Illinois
, 4 Ill. 2d 200, 206, 123 N.E.2d 302, 305 (1954)
.  Accordingly, because we conclude that the ICC's interpretation of section 9-201(a) of the Act is reasonable, we will not set aside its determination that the April 2000 order was a pass-to-file decision under section 9-201(a).  
  

 C. Waiver of the 45 Days' Notice Requirement

Petitioners next argue that the ICC failed to properly waive the 45 days' notice requirement of section 9-201.  Specifically, they contend that the waiver must be supported by substantial evidence and provide specific analysis and findings to permit informed judicial review under section 10-201(e) of the Act (220 ILCS 5/10-201(e) (West 2000)).  We disagree.

Section 9-201(a) provides, in relevant part, as follows:

"The [ICC], for 
good
 
cause
 
shown
, may allow changes without requiring the 45 days' notice herein provided for, by 
an
 
order
 
specifying
 
the
 
changes
 
so
 
to
 
be
 
made
 
and
 
the
 
time
 
when they
 
shall
 
take
 
effect
 
and
 
the
 
manner
 
in which
 
they
 
shall
 
be
 
filed
 
and
 
published
."  (Emphasis added.)  220 ILCS 5/9-201(a) (West 2000).

Here, the ICC entered an order specifying the changes to be made, the time when the changes would become effective, and the manner in which they would be published and filed.  The April 2000 order further stated the ICC's finding that good cause had been shown to justify its expedited treatment of the matter.  Thus, the ICC complied with section 9-201(a) of the Act.

Moreover, like the decision to pass a tariff to file, section 9-201 does not specify a particular method the ICC must follow in deciding whether good cause is shown.  See 
Antioch
, 4 Ill. 2d at 206, 123 N.E.2d at 305
.  Such a decision lies within the ICC's discretion, and formal findings and a hearing are not required.  See 
Antioch
, 4 Ill. 2d at 206, 209, 123 N.E.2d at 305-06
.  Thus, the ICC properly waived the 45 days' notice requirement.    
  

D. Formal Hearing

Petitioners next argue that the ICC was required to hold a formal hearing before making the April 2000 ruling.  Specifically, they contend that a formal hearing was required under (1) section 9-201 of the Act (220 ILCS 5/9-201 (West 2000)) and (2) the contested case provisions of the Illinois Administrative Procedure Act (Administrative Act) (5 ILCS 100/1-1 through 15-10 (West 2000)).  We disagree.

1. 
Section
 
9-201
 
of
 
the
 
Act

In its April 2000 order, the ICC allowed ComEd's tariff to pass to file under section 9-201.  Contrary to petitioners' assertions, the Supreme Court of Illinois, in analyzing section 36 of the Act (Ill. Rev. Stat. 1953, ch. 111 2/3, par. 36 (now 220 ILCS 5/9-201 (West 2000))), has specifically held that a formal hearing is not required before allowing a rate change to go into effect and the manner in which the ICC makes the pass-to-file decision is within its discretion.  
Antioch
, 4 Ill. 2d at 206, 123 N.E.2d at 305
.
  Thus, we conclude that the ICC was not required to hold a formal hearing under section 9-201 of the Act before entering the April 2000 order.

2. 
Contested
 
Case
 
Provisions
 
of
 
the
 
Administrative
 
Act

Section 10-25(a) of the Administrative Act provides that all parties to a contested case will be afforded an opportunity for a hearing after reasonable notice.  5 ILCS 100/10-25(a) (West 2000).  Section 10-101 of the Act provides that the Administrative Act applies to any investigation, inquiry, or hearing under the Act.  220 ILCS 5/10-101 (West 2000).  That section further states that "investigative proceedings and ratemaking cases shall be considered 'contested cases.'" 220 ILCS 5/10-101 (West 2000).  See also 83 Ill. Adm. Code §200.40 (Conway Greene CD-ROM March 2000).  

The Administrative Act defines ratemaking as "the establishment or review of or other exercise of control over the rates or charges for the products or services of any *** corporation operating or transacting any business in this State."  5 ILCS 100/1-65 (West 2000).  With a pass-to-file tariff, the ICC does not establish rates, exercise control over the rates, or go beyond fact gathering; instead, it merely allows the rates to go into effect.  Section 9-201 of the Act does not require the ICC to review the rates before they become effective.  Therefore, section 10-25(a) of the Administrative Act does not apply.  

Moreover, the fact that ComEd requested the parties to waive 
ex
 
parte
 rules is irrelevant.  While the 
ex parte
 communication provision applies to contested cases (83 Ill. Adm. Code §200.710 (Conway Greene CD-ROM March 2000)), hearings held by the ICC before deciding whether to pass a tariff to file do not have to comply with formal hearing procedures and are within the ICC's discretion (
Antioch
, 4 Ill. 2d at 206, 123 N.E.2d at 305-06)
. 

Thus, we conclude that the statutes do not require the ICC to hold a formal hearing before passing a tariff to file. 

E. ICC Regulations

Petitioners also argue that the procedures adopted by the ICC in this case violate due process because the ICC did not follow its own regulations.  Specifically, petitioners assert that (1) the schedule adopted by the ICC provided no opportunities for the parties to respond; (2) the ICC held a paper hearing without the consent of all parties (83 Ill. Adm. Code §200.525 (Conway Greene CD-ROM March 2000)); (3) the utilized procedures violated the ICC's policy to encourage full disclosure of relevant and material facts (83 Ill. Adm. Code §200.340 (Conway Greene CD-ROM March 2000)); and (4) the parties did not waive the right of cross-examination (83 Ill. Adm. Code §200.615 (Conway Greene CD-ROM March 2000)). 

The above assertions all concern formal hearings, which we have already concluded were not required here.  As earlier discussed, the manner in which the ICC decides whether to pass a tariff to file lies within its discretion.  If the ICC elects to hold a "hearing" before making such a decision, the hearing does not have to conform with formal hearing procedures.  
Antioch
, 4 Ill. 2d at 206, 123 N.E.2d at 305-06.  Therefore, the ICC did not violate its own rules.
     

F. Substantial Evidence and Sufficient Analysis

Petitioners next argue that (1) the ICC's April 2000 order is not supported by substantial evidence, in violation of section 10-201(e)(iv)(A) of the Act (220 ILCS 5/10-201(e)(iv)(A) (West 2000)); and (2) it lacks sufficient findings and analysis in violation of section 10-201(e)(iii) of the Act (220 ILCS 5/10-201(e)(iii) (West 2000)).  We disagree.  

Under section 9-201 of the Act, the ICC can pass a tariff to file without making formal findings or entering an order.  See 
Antioch
, 4 Ill. 2d at 206, 123 N.E.2d at 306.  Thus, the ICC's order was not required to contain sufficient findings, analysis, or substantial evidence.   
 

G. Section 16-112 of the Act

Consumers argue that the tariff approved by the ICC does not meet the standards prescribed by section 16-112 of the Act (220 ILCS 5/16-112 (West 2000)).  We disagree.  

A decision to pass a tariff to file or suspend rates, pursuant to section 9-201(a) (220 ILCS 5/9-201(a) (West 2000)), is not an inquiry into the propriety of the rates as in a formal hearing under section 9-201(b) (220 ILCS 5/9-201(b) (West 2000)).  Under section 9-201(a) of the Act, if the ICC does not suspend the rates, the utility is not required to justify its rates, as it must in a formal hearing (see 220 ILCS 5/9-201(c) (West 2000)).  See 
Antioch
, 
4 Ill. 2d at 209, 123 N.E.2d at 307.  Accordingly, we hold that section 16-112 of the Act does not apply under these circumstances.  
 

H. "Just and Reasonable"

Last, the Attorney General argues that the April 2000 order fails to state that (1) the ICC found ComEd's proposed changes to be "just and reasonable," pursuant to section 9-201(c) of the Act (220 ILCS 5/9-201(c) (West 2000)); and (2) ComEd failed to meet its burden of proof under the same section.  We disagree.  

As earlier stated, the ICC can decide whether to pass a tariff to file or suspend the rates without holding a hearing or making formal findings.  See 
Antioch
, 4 Ill. 2d at 206, 123 N.E.2d at 306.  Therefore, the ICC need not find rate changes in a pass to file tariff "just and reasonable."  Only after a formal hearing under section 9-201(b) does the ICC have to enter an order finding the rate changes "just and reasonable."  220 ILCS 5/9-201(c) (West 2000).  Accordingly, we conclude that the April 2000 order did not violate section 9-201(c) of the Act.

In light of our resolution of this issue, we need not address whether ComEd met its burden of proof.

III. CONCLUSION

For the reasons stated, we affirm the ICC's judgment.

Affirmed.

MYERSCOUGH and COOK, JJ., concur.